Argued May 5, affirmed October 15, petition for rehearing denied
December 3, 1958

## KELLER *v.* COCA COLA BOTTLING CO.

330 P. 2d 346

*John F. Kilkenny* and *John H. Kottkamp,* Pendleton, argued the cause for appellant. With John N. Kottkamp on the brief were Kilkenny & Fabre, Pendleton.

*Robert W. Collins,* Pendleton, argued the cause and filed a brief for respondent.

Before Perry, Chief Justice, and Rossman, Lusk, McAllister and Sloan, Justices.

SLOAN, J.

This is an action in tort by plaintiff-respondent seeking damages for injury alleged to have been caused by drinking from a bottle of Coca Cola containing a cigar stub. She alleged that she was served the bottle at the coffee shop of a hotel in Pendleton, and that the bottle in question had been bottled and supplied by defendant. Trial by jury resulted in a verdict and judgment for plaintiff. Defendant appeals.

Defendant's first assignment presents the principal issue to be decided. It challenges the refusal of the trial court to direct a verdict for defendant or, in the alternative, to remove certain specifications of negligence from the jury's consideration. This is a case of first impression in Oregon.

The assignment requires a statement of the facts and inferences to be drawn in a light most favorable to plaintiff. A careful examination of the fact structure of this case reveals these facts which can be taken as proved: The bottle served to plaintiff was of the familiar shape and size so widely known as a "coke" bottle. Plaintiff drank about half its contents before discovering a very bitter taste and becoming nauseous. Its contents had the appearance of that product. The defendant was the only person to supply Coca Cola to the hotel. The bottle was taken from its regular place of cooling and served in the usual manner. The waitress detected no difference between this and other bottles nor in the removal of its cap. She could find no evidence that the bottle had been opened and testified she could have noticed the difference if the bottle had been opened. This was verified when this

waitress, upon cross-examination, readily detected that a bottle handed to her by defendant's counsel, to test her ability, had been previously opened. There is no evidence to indicate that this bottle had been handled by the hotel employes in any different manner from any other bottle. Nevertheless, we reach the ultimate fact that there was ample evidence to establish the presence of foreign substance, described as a cigar stub.

The defendant contends that the evidence of care exercised by defendant in its cleaning and filling process eliminates entirely the probability that it could have entered or remained in the bottle at that stage of the processing. It further contends that an inference must be drawn, therefore, that some meddler stealthily removed the cap, inserted the cigar stub and carefully recapped the bottle. It emphasizes that its competitors had access to the storeroom where the Coca Cola was stored and we should, therefore, assume or infer that this rascallity was perpetrated by an unscrupulous competitor.

The crux of the problem is, therefore, the effect of this lack of complete control by the defendant, as reflected by the opportunity to tamper, upon the usual inference of negligence arising from the presence of foreign substance in a sealed container. Harper and James, The Law of Torts, Vol II, § 28.14 et seq; 52 ALR2d 159. Does this require the plaintiff to affirmatively prove that the substance was in the bottle when it left the defendant's bottling plant and no other person could have or did insert it in the bottle?

The lack of cases on this particular question in Oregon is not reflected elsewhere.

As a preliminary statement to our consideration of this authority it should be mentioned generally that

the question in issue has been treated by almost numberless decisions of the courts and almost as many text and law review writers. It has been analyzed as a matter of implied warranty and as a matter of negligence. We believe extended discussion of the many theories advanced for solution to be unwarranted and unnecessary. For those who desire a more extended discussion thereof we refer them to Harper and James, supra at § 28.11 et seq; Prosser on Torts 2d ed, § 83 et seq; 52 ALR2d 117; and 60 W Va Law Rev 110; 4 St. Louis University Law Journal 207; 30 Or Law Rev 387, to name only a few of the many extensive considerations. A particularly careful analysis of the entire question is presented in Products Liability and the Food Consumer by Reed Dickerson, Little, Brown and Company, 1951.

Specifically, there is authority to support the view espoused by defendant. *Jordan v. Coca Cola Bottling Co.,* 117 Utah 578, 218 P2d 660, 52 ALR2d 108; *Coca Cola Bottling Works v. Sullivan,* 178 Tenn 405, 158 SW2d 721, 171 ALR 1200. Other similar cases are cited by defendant and have been considered. These are the ones most frequently cited as leading cases in placing upon the plaintiff, in a case of this type, the burden of proving lack of tampering. These cases hold, and it is forcibly and ably contended by defendant here, that this lack of complete or exclusive control deprives the plaintiff of the right to rely upon an inference that the mishap occurred while the bottle was within the control of the defendant.

In these cases it is held that "plaintiff failed to establish with sufficient certainty that foreign objects were in bottled beverages when they left the manufacturer and the evidence failed to establish that there was no reasonable opportunity for tampering." *Jordan*

*v. Coca Cola Bottling Co.,* supra, at 218 P2d 665. In other words these cases conclude that when the bottled goods are stored on the retailer's premises in a place or manner to enable another to open and recap a bottle without detection the burden is on the plaintiff to show that tampering did not occur. As stated in the dissenting opinion in the Jordan case this in effect is to "deny recovery to practically every consumer." This authority was considered, and cited, by Mr. Dickerson in his book on products liability, supra. After an exhaustive analysis of many, but not all, of the cases from the various states, however, he concludes:

> "The tampering point has not proved difficult for most products, since canned goods and other goods in sealed containers generally speak for themselves. If the reported cases are a reliable index, the soft-drink bottle cap has been the only significant source of uncertainty. Even here it has apparently not caused real difficulty outside of Tennessee and several other states[1]. Most courts seem satisfied with evidence that the bottle and contents had a normal appearance or, at most, with evidence showing the usual way in which the bottles are distributed and handled.[2] The real burden of persuasion on this point seems to be on the defendant.[3]" (The footnote references in the quote refer to numerous cases, only some of which are cited in this opinion.)

We believe the greater weight of and better reasoned authority supports this conclusion. In such typical cases as *Dr. Pepper Co. v. Brittain,* 234 Ala 548, 176 So 286; *Le Blanc v. Louisiana Coca Cola Bottling Co.,* 60 So2d 873, 221 La 919; *Tafoya v. Las Cruces Coca Cola Bottling Co.,* 59 N Mex 43, 278 P2d 575, and *Rutherford v. Huntington Coca Cola Bottling Co.* (W Va), 97 SE2d 803, the facts were similar to

the instant case. It was held in each that the delivery to the plaintiff in the usual and normal course of distribution of a bottle containing foreign substance without further elimination of the element of tampering, raised an inference of lack of care by the defendant sufficient to avoid a directed verdict. *Escola v. Coca Cola Bottling Co.*, 24 Cal2d 453, 150 P2d 436, was an exploding bottle case. Because of the greater opportunity for damage by customary handling it has been held that there is less reason to permit an inference of negligence sufficient for a jury's consideration in the explosion cases than in the foreign substance cases. *Le Blanc v. Louisiana Coca Cola Bottling Co.*, supra; *Miami Coca Cola Bottling Co. v. Todd* (Fla), 101 So2d 34. Even so the California Supreme Court applied such an inference in that case. The concurring opinion of Mr. Justice Traynor in that case is probably more frequently cited in recent law reviews and texts than any other found.

A recent decision of the Texas Court of Civil Appeals is very close in point. *Wichita Coca Cola Bottling Co. v. Tyler* (Tex), 288 SW2d 903. In that case a dead mouse was found in a bottle of coke partially consumed by plaintiff. The bottle was purchased at a service station. As in the instant case, the bottling company delivered its product to a storeroom accessible to competitors and members of the public. The charge was made there, as here, that this afforded a strong belief in the possibility of tampering. The language used by the court is equally applicable to the case at hand:

"We do not perceive where plaintiff should ordinarily have a greater burden of proof thrust upon him because of the fact that a manufacturer adopts a type of container susceptible to undetected tampering, or avails competitive wholesalers of an

opportunity to sabotage one another's products, at least in the absence of some character of notice that the wholesalers were predisposed to such acts. We believe that we might take judicial notice that those in the soft drink business are not so disposed, as evidence the fact that for at least a generation they have continued the use of metal type 'clamp-on' bottle caps which may be removed and replaced. We believe that this continued custom, instead of some character of cap with seal, which would be necessarily broken in order to tamper with the contents, speaks for itself. It seems to us that the same thing would apply to third persons other than the competitive wholesalers, particularly where there is no evidence that there had been any tampering."

It should be further noted that in this case, as well as in every other one we have examined, there has been no evidence that tampering by competitors or busybodies was an actual probability. The only indication is the contention that the *opportunity* or possibility existed. This is not sufficient to establish such a probability as a matter of law, as defendant requests us to do.

■ We hold, therefore, that there was a reasonable inference for the jury's consideration that the cigar stub entered or remained in the bottle while in the exclusive control of defendant. It was not incumbent upon the plaintiff to prove that tampering did not exist. Having established the delivery to be in the normal course of processing and dispensing, plaintiff was not required to negative the doubtful *possibility* of unwarranted or unlawful acts by other persons.

The parties discuss the applicability of the doctrine of res ipsa loquitur. We do not believe that the facts of this case require a determination of this issue.

The remainder of defendant's first assignment is

directed to the refusal of the trial court to withdraw from the jury's consideration two specifications of negligence alleged in plaintiff's complaint. The first such specification alleged is that defendant "permitted said portion of the cigar stub to be and remain immersed in said Coca Cola bottle * * *." What has already been said disposes of this part of the assignment. The second specification moved against alleges a failure to inspect properly on the part of defendant.

■ In this instance there is actual evidence from which the jury could determine the efficiency of the method of inspection. Defendant's manager testified that the inspection occurred after the bottles were washed and refilled. Following the filling process the bottles were exposed to strong artificial light while moving along a conveyor chain. Two employes, sometimes only one, had the responsibility of attempting to examine the bottles and their contents and at the same time remove the bottles from the conveyor and place them in cases. The employes were so engaged six to eight hours per day. Occasionally foreign substance was detected. The ability of a person to carefully inspect under these conditions was clearly for the jury to determine.

■■ Defendant's second assignment concerns the admission into evidence of the bottle allegedly served plaintiff. It contains some dried up material, not now recognizable. It was apparently in somewhat the same condition at the trial. The trial of the cause did not occur for almost two and one-half years after the incident in question. The admission of the exhibit was objected to on the ground that it was not properly "connected up." From the arguments in the brief we assume it is meant that the chain of posssesion of the bottle was not clearly established. We believe the

evidence on this issue was sufficient to admit the exhibit. 20 Am Jur, Evidence 602, § 719. Even if it could be said that the exhibit should not have been received it was in no way prejudicial to the defendant. The fact that the bottle plaintiff drank from was an easily recognized Coca Cola bottle and that it contained an object identified as a cigar stub was clearly established by the testimony of independent witnesses. The exhibit did not add to nor detract from this evidence.

■ The third assignment presents the unique contention that the court should have instructed the jury that in no event should it return a verdict in excess of $350. The complaint prayed for $3,500. Defendant assigns no basis for his arbitrary determination that this was the correct amount of damages nor any authority authorizing or supporting such an infringement of the jury's function. We know of no reason why a court should violate Art VII, § 3, Oregon Constitution, by attempting to do it in advance of the jury's determination. See also *Medford National Bank v. Blanchard*, 136 Or 467, 299 P 301.

Finding no error, we affirm the judgment.