**John R. McCANN and Mary Jane McCann, Plaintiffs,**

v.

**ATLAS SUPPLY COMPANY and Humble Oil & Refining Company, Defendants.**

**Civ. A. No. 68–1103.**

United States District Court,
W. D. Pennsylvania.

Jan. 28, 1971.

Thomas J. Shorall, Pittsburgh, Pa., for plaintiffs.

John M. Duff, Jr., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendants.

OPINION

WEIS, District Judge.

On a bright clear day in August, 1967, the plaintiff, John R. McCann, was driving his automobile, an Oldsmobile 98, along the Ohio Turnpike not far from Lorain, Ohio. He had five members of his family and relatives as passengers, and was towing a trailer which had been rented for the purpose of taking a camping-type vacation. The car was proceeding along at a speed of about 50 to 55 miles per hour when a sound like air escaping was heard, the car began to fishtail and the trailer jackknifed. The automobile went out of control onto the berm on the right side of the road, where the trailer overturned. As McCann alighted from the car, he noticed the left rear tire of the automobile was smoking and shortly thereafter it burst into flame. The car and its contents were severely damaged by the fire.

In anticipation of the vacation trip, the plaintiff had purchased two pairs of new Atlas Plycron tires in separate transactions, the earliest being June 22, 1967, the second approximately three or four weeks later. McCann was unable to state whether the tire which had burned had been bought in June or July but, in any event, it appears that the automobile had been driven no more than 2,000 miles from the date of the earlier acquisition and substantially less when measured from the time of the July sale.

The plaintiff and his family had driven from Pittsburgh to Lorain, Ohio where the rental organization made the necessary modifications to attach a hitch to the Oldsmobile and hookup the trailer. A few minutes before that work was begun, the plaintiff bought gasoline and had the tires and brakes checked by the attendant at a service station nearby.

Lorain was about an hour's drive from the accident scene and in that interval the testimony disclosed nothing unusual which might have caused damage to the tires. The trip was on paved roads, the trailer handled properly and the brakes operated in approved

fashion as the plaintiff drove at less than normal turnpike speed.

McCann did not know how far the Oldsmobile went after he heard the sound of air escaping but there' were skid marks of 50 to 100 feet on the road surface, some of which gave the appearance of metal scraping. Before the tire burst into flames, the plaintiff observed that it was all chewed up and parts had been torn off including a portion of the bead.

A hissing sound from the butane storage tanks on the front part of the trailer caught the plaintiff's attention and he immediately turned off the gas. He did not believe that enough of the gas escaped to cause the fire at the left rear wheel.

The plaintiff relied upon the doctrine of strict liability as set out in Section 402A of the Restatement of Torts. His contention was that the loss of air from the tire was a malfunction which was evidence of a defect in the product. The tire itself could not be analyzed since it was totally destroyed in the fire. There was no proof that the fire began before the tire was deflated or whether combustion occurred when the heat of the deflated tire increased while it was being squeezed between the rim and the concrete before the vehicle came to a stop.

The defendant was the distributor of the tires which had been manufactured by the Uniroyal Company. Its defense consisted of what might be classified as the "it can't happen" type of testimony.

An expert called by the defense admitted that the size of the tires, 9.00 x 14, was the proper size for the automobile which the plaintiff was driving, and did not contend that the attachment of the trailer resulted in an overload. It was admitted further that a speed of 50 to 55 miles per hour was not excessive under the load and weather conditions then prevailing. The defendant's expert was quite positive in stating that he had never encountered a case of a tire burning, at least while it was properly inflated, and that the very best methods and design were followed in the manufacture of the tires.

Since the tires were purchased in Pennsylvania and the plaintiff was a resident of this state, it would seem that the contacts grouping rule of conflicts of law would dictate that the law of Pennsylvania would apply rather than that of Ohio which had no connection with the incident other than the fact that the accident occurred there.

A number of Pennsylvania cases [1] hold that the occurrence of a malfunction may be circumstantial evidence of a defect in a product and hence sufficient to carry the case to a jury on a plaintiff's contention that a manufacturer is liable under Section 402A.

The plaintiff did satisfy the requirements of the Restatement and the Pennsylvania decisional law. It was uncontroverted that there was something less than 2,000 miles on these tires which were "first line" grade; that there had been no unusual driving conditions or road conditions to which the tires had been exposed; that they had been checked by a service station attendant within a very short time before the accident occurred; and there was no evidence of improper inflation pressures or of impact between the tires and foreign objects on the road from the time of the purchase to the time of the accident.

The defendant argues that a tire could be damaged as a result of striking objects on the roadway. While not disputing this contention, it is also true that the burden is not upon the plaintiff to exclude every possible source of sudden deflation other than a defect in the tire itself. Fundamentally, the evidence pre-

1. MacDougall v. Ford Motor Co., 214 Pa. Super. 384, 257 A.2d 676 (1969) ; Kridler v. Ford Motor Co., 422 F.2d 1182 (3 Cir. 1970); Greco v. Bucciconi Engineering Co., 407 F.2d 87 (3 Cir. 1969);

LaGorga v. Kroger Co., 275 F.Supp. 373 (W.D.Pa.) aff'd 407 F.2d 671 (3d Cir. 1969); Cf. Forry v. Gulf Oil, 428 Pa. 334, 237 A.2d 593.

sented a question of fact for the trier of the facts. This matter was tried non-jury and it was the conclusion of the court that the preponderance of the evidence favored the plaintiff's contention that there was a defect in the tire.[2]

The obvious effect of Section 402A is to emphasize the responsibility of the seller, distributor and manufacturer of products and to remove the consumer's burden of proving either a specific defect in, or negligence in the production of wares which fail to meet required standards. In this particular case, neither party could produce evidence of either the existence or lack of a specific defect in the tire because it was destroyed in the fire which resulted in a total loss to the automobile.

 Prospective purchasers are the objects of sustained and vigorous advertising campaigns extolling the toughness of automobile tires, their reliability and dependability. Common experience indicates that no owner of a tire expects it to fail with less than 2,000 miles on its treads. A careful consideration of all the evidence in the case led the trial court to conclude that the most likely cause of the mishap was a defect in the tire and, accordingly, judgment was rendered for the plaintiff.

■ As the result of the overturning of the trailer and the burning of the automobile, the husband plaintiff suffered property damage in the amount of $4,015.00. His co-plaintiff and wife, Mary Jane McCann, asserted a claim for personal injuries consisting mainly of an aggravation of a preexisting arthritic condition resulting in medical and hospital bills of $1,965.00, and loss of earnings as a teacher in excess of several thousand dollars. The testimony to support the personal injury claim was inadequate to attribute the whole of the claimed damages to the automobile accident. The court believes that the wife plaintiff suffered only a mild aggravation of an arthritic condition which had been symp-tomatic before the accident and for which medical treatment had been continuing for some time. It seems that most of the loss which was incurred as a result of the arthritis would have taken place even in the absence of the automobile accident.

An award of $500.00 represents a fair proration of the medical expenses for which the husband is responsible and for his loss of consortium as the result of the accident. For the slight aggravation of the wife's condition sustained as a result of the accident, $500.00 to cover the claim for her pain and suffering is considered adequate. Accordingly, judgments were rendered in favor of the husband plaintiff in the amount of $4,500.00 and $500.00 in favor of the wife plaintiff.

This opinion shall be in lieu of findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52.

---

**2.** See Barth v. Goodrich Time Co., 265 Cal.App.2d 228, 71 Cal.Rptr. 306 (1968).