HOLLOWAY v GENERAL MOTORS CORPORATION (ON
REHEARING)

Docket No. 57139. Argued May 4, 1976 (Calendar No. 7).—Decided
February 14, 1977. 399 Mich 617. Argued on rehearing January
3, 1978 (Calendar No. 1).—Decided December 4, 1978.

Sharon H. Holloway, as next friend of Brenda Holloway and as
administratrix of the estate of Ernest T. Holloway, deceased,
brought an action against General Motors Corporation (Chevro-
let Division), Eaton County, and the Eaton County Road Com-
mission for damages suffered when an automobile driven by
Ernest T. Holloway in which Brenda Holloway was a passenger
left a gravel road and struck a telephone pole. Plaintiffs alleged
that General Motors, the manufacturer of the automobile,
breached express and implied warranties, failed to design the
steering mechanism properly and was negligent in the manu-
facture and inspection of the automobile. The Eaton Circuit
Court, Richard Robinson, J., directed a verdict for defendant
General Motors on the ground that there was no evidence of a
specific defect in the automobile. The Court of Appeals, Allen,
P.J., and O'Hara, J. (N. J. Kaufman, J., dissenting), affirmed
(Docket No. 19334). The decision of the Court of Appeals was
affirmed by an equally divided court. 399 Mich 617 (1976). On
rehearing by the Supreme Court it was *held:*

1. The plaintiffs allege that the cause of the accident was the
failure on the road of a defective ball joint in the right front
suspension. General Motors has conceded, for the purpose of
this rehearing, that the break in the ball joint occurred on the
roadway. The Court therefore proceeds on the premise that it is
reasonable to infer that the ball joint assembly failed on the
roadway and thus was defective. It is also reasonable, then, to
infer that the defect in and failure of the assembly caused the

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 6, 7] 63 Am Jur 2d, Products Liability §§ 10-12,15-21.
[2] 63 Am Jur 2d, Products Liability § 130.
[4, 5, 8] 63 Am Jur 2d, Products Liability §§ 89, 90.

Liability of manufacturer or seller for injury caused by automobile
or other vehicle, aircraft, boat, or their parts, supplies, or equip-
ment. 78 ALR2d 460.

accident. The issue is whether the defect was shown to have been attributable to the manufacturer.

2. A plaintiff has the burden of showing that when the product left the manufacturer it was defective. He sustains his burden when he establishes with direct or circumstantial evidence a reasonable probability that the defect is attributable to the manufacturer; he is not obliged to eliminate all possible causes of the accident consistent with the view that there was no manufacturing defect. On a motion for directed verdict, the question is whether it is reasonable to infer from the evidence, direct or circumstantial, that the accident was probably caused by a defect attributable to the manufacturer. Questions of comparative probability are to be resolved by the trier of fact.

3. Where a failure is caused by a defect in a relatively inaccessible part integral to the structure of the automobile not generally required to be repaired, replaced, or maintained, it may be reasonable, absent misuse, to infer that the defect is attributable to the manufacturer. The circumstantial evidence in this case adequately supports such a reasonable inference. The parties agree that the break in the ball joint assembly was a clean, metallurgically fresh impact fracture, not attributable to fatigue or wear, tending to negative lack of requisite maintenance, improper repair, and even prior misuse as alternative causes. There is left the reasonable probability that something was inherently wrong with the ball joint assembly such that it was unable to withstand an impact it should have withstood. The alternative explanations, that it was designed improperly, that the material used was inadequate, or some combination of these, are all attributable to the manufacturer and indicate a product defect.

4. A plaintiff need not identify the specific cause of the defect to sustain his burden of proof. While such identification may be useful in enabling the manufacturer to effect corrective measures, it is the injury inflicted on the plaintiff that entitles him to a remedy, not his skill in discovering precisely where the manufacturing process went wrong.

5. Even though the ball joint assembly was still available to the plaintiffs, they were under no obligation to prove the particular defect by expert testimony of metallurgists or automobile designers. They were at liberty to establish that there was a reasonable probability of a manufacturing defect by direct *or* circumstantial evidence. A manufacturing defect can be proved by circumstantial evidence without expert opinion testimony.

Justice Fitzgerald, with Justices Coleman and Ryan, concur-

red in the result. They have become persuaded upon rehearing that a question of fact was presented upon which reasonable minds could differ, and that therefore a directed verdict for the defendant was improper. Probative evidence was presented by the plaintiffs' witnesses that the break in the ball joint assembly occurred on the roadway before the driver lost control; in fact, General Motors conceded, for purposes of the rehearing, that the break occurred on the roadway. In addition, there was uncontroverted evidence that the break was fresh and metallurgically clean and caused by an impact failure rather than fatigue or wear. Further, the defendant's expert testified that the automobile was designed to travel on roads even worse than the road on which the accident occurred. This evidence gives rise to a jury question concerning a possible manufacturing defect in this particular ball joint assembly.

Reversed and remanded for new trial.

60 Mich App 208; 230 NW2d 380 (1975) reversed.

OPINION OF THE COURT

1. PRODUCTS LIABILITY — DEFECT — BURDEN OF PROOF — REASONABLE PROBABILITY.

A plaintiff in a products liability case sustains his burden of establishing that when the product left the manufacturer it was defective by establishing with direct or circumstantial evidence a reasonable probability that the defect is attributable to the manufacturer.

2. PRODUCTS LIABILITY — DEFECT — BURDEN OF PROOF.

A plaintiff in a products liability case against a manufacturer where an accident is caused by a defect in the product is not obliged to eliminate all possible causes of the accident consistent with the view that there was no manufacturing defect.

3. PRODUCTS LIABILITY — DEFECT — REASONABLE INFERENCES.

A plaintiff in a products liability case against a manufacturer who has presented evidence, direct or circumstantial, from which it is reasonable to infer that an accident was probably caused by a defect attributable to the manufacturer has made out a case for the jury, and the question whether the inference suggested by the plaintiff's theory is the correct one, or whether it was sufficiently rebutted, is for the jury.

4. PRODUCTS LIABILITY — AUTOMOBILES — DEFECT — INFERENCES.

An inference that a defect in an automobile is attributable to the manufacturer may be reasonable where a failure is caused by a

defect in a relatively inaccessible part integral to the structure of the automobile not generally required to be repaired, replaced, or maintained, absent misuse.

5. PRODUCTS LIABILITY — AUTOMOBILES — DEFECT — EVIDENCE.

Circumstantial evidence in an action against an automobile manufacturer for damages caused when a ball joint assembly on the right front suspension of an automobile broke on the road, causing the automobile to leave the road, adequately supported a reasonable inference that the accident was probably caused by a defect attributable to the manufacturer where there was evidence and it was agreed by the parties that the break in the ball joint assembly occurred on the road and was a clean, metallurgically fresh impact fracture, which indicated impact failure not attributable to fatigue or wear, and also tended to negative lack of requisite maintenance, improper repair, and even prior misuse as alternative causes; there was a reasonable probability that something was inherently wrong with the ball joint assembly such that it was unable to withstand an impact it should have withstood.

6. PRODUCTS LIABILITY — DEFECT — BURDEN OF PROOF — SPECIFIC CAUSE.

A plaintiff in an action against a manufacturer for damages caused by a defective product need not identify the specific cause of the defect.

7. PRODUCTS LIABILITY — DEFECT — EVIDENCE.

A plaintiff in an action against a manufacturer for damages caused by a defective product may establish that there was a reasonable probability of a manufacturing defect in the product by direct or circumstantial evidence and need not offer expert testimony as to the defect, even though the defective part is available for inspection.

CONCURRING OPINION BY FITZGERALD, J.

8. PRODUCTS LIABILITY — AUTOMOBILES — DEFECT — EVIDENCE.

*Evidence presented by the plaintiffs in an action against an automobile manufacturer that a ball joint assembly in the right front suspension broke on the roadway before the driver lost control of the automobile, that the break was fresh and metallurgically clean and caused by an impact failure rather than fatigue or wear, and testimony by the defendant's expert that the automobile was designed to travel on roads even worse than the road on which the accident occurred, gave rise to a*

*jury question concerning a possible manufacturing defect in the particular ball joint assembly.*

*Abood, Abood & Abood, P.C.* (by *Richard J. Abood* and *William E. Rheaume*), for plaintiffs.

*Cholette, Perkins & Buchanan* (by *Grant J. Gruel, Otis M. Smith* of counsel) for defendant General Motors Corporation.

LEVIN, J. Rehearing was granted to resolve the equal division of this Court following a prior submission of this cause. *Holloway v General Motors Corp,* 399 Mich 617; 250 NW2d 736 (1977). The trial court directed a verdict of no cause of action in favor of General Motors on the ground that the Holloways had failed to establish a defect in the ball joint assembly of the automobile. The Court of Appeals affirmed.

Both opinions on the prior submission are in agreement that a plaintiff may establish by circumstantial as well as direct evidence that there was a defect in the product when it left the manufacturer. The disagreement is whether it would be reasonable to infer such a defect from the circumstantial evidence in the instant case.

We conclude that it would be reasonable to draw such an inference.

We have also considered General Motors' further contention, on rehearing, that a failure attributable to the manufacturer is not proven unless the specific cause of the defect is identified. We conclude that, although the specific cause was not so isolated, the Holloways satisfied their burden when they presented evidence from which the jury could reasonably infer that some defect in manufacture caused the accident.

We reverse and remand for a new trial.

I

On May 28, 1971, Ernest Holloway was driving at a speed of approximately 50 to 55 miles per hour along a gravel road in Eaton County when his automobile left the road. The vehicle struck a utility pole. Holloway was killed and his daughter, Brenda, seriously injured. The automobile was four years old, had been driven over 47,000 miles, and there were two previous owners. The Holloways alleged that the accident was caused by a defective ball joint assembly in the right front suspension which broke while the automobile was traveling over chuckholes in the road.

Sharon Holloway, as administratrix of her deceased husband's estate and as next friend of her daughter, commenced this action against General Motors and other defendants. The trial judge granted General Motors' motion for a directed verdict;[1] on appeal, the Court of Appeals affirmed in a split decision on the ground that a manufacturing defect had not been proven. This Court affirmed by a 3 to 3 division. The Holloways' application for rehearing was granted.

II

On the prior submission, one of the issues was

---

[1] The judge said:

"In this case, the plaintiff established through its expert Harris, that the suspension system broke while the vehicle was on the highway. They further established through Harris, that it broke as a result of hitting a chuckhole or chuckholes. I suppose it might be inferred from this, that there was a breach of warranty, because the car should have been equipped to survive such an impact.

"Plaintiffs submitted no proofs on that point. Moreover, none of the proofs submitted, indicate defective parts.

"Couple this with the fact that this vehicle had performed for more than four years and some 47,000 miles without evidence of part failure in its suspension system, there's just not facts upon which an inference of parts defect can exist."

whether the ball joint assembly of the Holloway automobile failed while it was on the roadway, as contended by the Holloways, or after it hit a ditch and then a utility pole,[2] as contended by General Motors. If the assembly did not break until after the automobile left the roadway that would indicate the cause of the failure was not a defect in the manufacture but, rather, the driver's loss of control of the automobile and its impact against the ditch or pole.

The opinion for affirmance did not find it necessary to consider that issue because it concluded that, in all events, the circumstantial evidence was insufficient to support an inference of a manufacturing defect. The opinion for reversal concluded that there was sufficient evidence from which the trier of fact could conclude that the break in the assembly occurred on the roadway and, thus, that the break was not a result of the driver's loss of control of the automobile.

Although General Motors continues to argue that it would be more reasonable to infer from certain circumstantial evidence that the break occurred after the automobile left the roadway, it has conceded, for the purposes of this rehearing, that the break occurred on the roadway.[3]

III

We therefore proceed on the premise that it would be reasonable to infer that the ball joint assembly failed on the roadway before the driver lost control of the automobile and, thus, that the

---

[2] General Motors states that the automobile hit a ditch before it hit the utility pole, a point overlooked in the opinion for reversal on prior submission.

[3] The trial court so found; see the quotation from its findings directing a verdict, fn 1, *supra*.

assembly was defective. Proceeding on that premise, it is also reasonable to infer that the defect in and failure of the assembly caused the accident.[4]

The still-disputed issue is whether that defect was shown to have been attributable to the manufacturer.[5]

A plaintiff has the burden of establishing that when the product left the manufacturer it was defective. He is not, however, obliged to eliminate all possible causes of the accident consistent with the view that there was no manufacturing defect.[6] He sustains his burden when he establishes with direct or circumstantial evidence a reasonable probability that the defect is attributable to the manufacturer.[7]

---

[4] Plaintiffs' expert testified that upon such a failure the automobile would not be driveable by an average driver traveling at 50 to 55 miles per hour over a bumpy gravel road. A police officer testified that a fresh break in the A-frame made the car "completely indriveable [sic]" in that condition because the car would uncontrollably veer to the right. Another officer testified that the appearance of the tire tracks indicated that something had made the car pull to the right.

[5] The term "defect", as applied in Michigan products liability cases, "marks off the zone of the manufacturer's responsibility. *Piercefield v Remington Arms Co, Inc,* [375 Mich 85], 98 [; 133 NW2d 129 (1965)]." *Snider v Bob Thibodeau Ford, Inc,* 42 Mich App 708, 713; 202 NW2d 727 (1972).

[6] See *Greco v Bucciconi Engineering Co, Inc,* 283 F Supp 978, 984-985 (WD Pa, 1967), aff'd 407 F2d 87 (CA 3, 1969); *Kohler v Ford Motor Co,* 187 Neb 428; 191 NW2d 601 (1971); *Farmer v International Harvester Co,* 97 Idaho 742, 749; 553 P2d 1306, 1313 (1976); *Shoshone Coca-Cola Bottling Co v Dolinski,* 82 Nev 439, 443; 420 P2d 855, 858 (1966); *Keller v Coca Cola Bottling Co,* 214 Or 654, 661; 330 P2d 346, 350 (1958); *Escola v Coca Cola Bottling Co of Fresno,* 24 Cal 2d 453, 458; 150 P2d 436, 439 (1944); *McCann v Atlas Supply Co,* 325 F Supp 701, 703-704 (WD Pa, 1971); Prosser, Torts (4th ed), § 103, pp 672-673.

[7] See *Stewart v Budget Rent-A-Car Corp,* 52 Hawaii 71; 470 P2d 240 (1970); *McCann v Atlas Supply Co, supra,* pp 703-704; *Bollmeier v Ford Motor Co,* 130 Ill App 2d 844, 851-852; 265 NE2d 212, 217 (1970); *Greco v Bucciconi Engineering Co, supra,* pp 984-985; *Phillips v Newport,* 28 Tenn App 187, 202; 187 SW2d 965, 971 (1945); *Browder v Pettigrew,* 541 SW2d 402, 405 (Tenn, 1976); *Escola v Coca Cola Bottling Co, supra,* p 458; *Vandagriff v J C Penney Co,* 228 Cal App 2d 579, 583; 39 Cal Rptr 671, 674 (1964); *Coca-Cola Bottling Co v Negron Torres,* 255 F2d 149, 153 (CA 1, 1958); *Henningsen v Bloomfield*

On a motion for directed verdict, the question is whether it is reasonable to infer from the evidence, direct or circumstantial, that the accident was probably caused by a defect attributable to the manufacturer. Questions of comparative probability are to be resolved by the trier of fact.[8] As stated in *Schoepper v Hancock Chemical Co,* 113 Mich 582, 586, 589; 71 NW 1081 (1897), and since reaffirmed in *Schedlbauer v Chris-Craft Corp,* 381 Mich 217, 230-231; 160 NW2d 889 (1968):

"It is true that where an injury occurs that cannot be accounted for and where the occasion of it rests wholly in conjecture, the case may fail for want of proof. * * * But such cases are rare, and that rule should never be so extended as to result in a failure of justice, or in denying an injured person a right of action where there is room for balancing the probabilities, and for drawing reasonable inferences better supported upon one side than upon the other. * * * *[T]he question of whether the inference suggested by the plaintiff's theory is the correct one, or whether it was sufficiently rebutted, was for the jury.*" (Emphasis supplied.)[9]

The opinion for reversal on the prior submission of this cause similarly declared:

"Although the strength of an inference that the accident was caused by a manufacturing defect depends on the plausibility of competing explanations for the accident, plaintiffs did not have the burden of proving that the accident could only be attributable to a manufacturing defect or 'of effectively eliminating any other factors or circumstances which could have been respon-

---

*Motors, Inc,* 32 NJ 358, 410; 161 A2d 69, 98 (1960); *Summers v Interstate Tractor & Equipment Co,* 466 F2d 42, 46-47 (CA 9, 1972); Prosser, *supra,* § 103, pp 672-673; 2 Dooley, Modern Tort Law, § 32.63.

[8] See *Kaminski v Grand Trunk W R Co,* 347 Mich 417, 422; 79 NW2d 899 (1956); *MacDougall v Ford Motor Co,* 214 Pa Super 384; 257 A2d 676 (1969).

[9] See *Kujawski v Cohn,* 56 Mich App 533; 224 NW2d 908 (1974).

sible for the failure.' It was enough that they indicated
'a logical sequence of cause and effect * * * notwith-
standing the existence of other plausible theories with
or without support in the evidence.' *Schedlbauer v
Chris-Craft Corp,* 381 Mich 217, 220, fn 1; 160 NW2d
889 (1968). They were 'not required to offer evidence
which positively exclude[s] every other possible cause of
the accident.' *Swensson v New York, Albany Despatch
Co,* 309 NY 497, 502; 131 NE2d 902, 904 (1956)."[10]

## IV

The opinion for reversal on the prior submission
contrasted a defect in a wheel assembly with a
failure in a part of the automobile subject to
periodic maintenance, *e.g.,* the braking system:[11]

"Wheel assemblies are not expected to wear out and
be replaced. There was no suggestion that this assembly
had been tampered with or that it is a part of the car
that is expected to be or reasonably should be inspected
on a periodic basis.

"While it may be necessary in some cases for a
plaintiff to introduce evidence of proper maintenance to
support an inference that the defect occurred before the
product left the factory, where the defect alleged is
latent in the very structure of the vehicle and may not
in ordinary circumstances be discovered during routine
maintenance, evidence of proper maintenance is not
required.

* * *

"While prior malfunction of a brake system may
indicate a manufacturing defect, the absence of prior
malfunction does not negative the existence of a latent
structural defect. A defective break system may func-

---

[10] *Holloway v General Motors Corp,* 399 Mich 617, 635-636; 250
NW2d 736 (1977) (LEVIN, J.).

[11] See *Kupowski v Avis Ford, Inc,* 395 Mich 155, 166; 235 NW2d 324
(1975), and *Snider v Bob Thibodeau Ford, Inc, supra,* where the defect
alleged was in the braking system.

tion intermittently; it is the nature of a wheel assembly failure that there are no 'prior incidents.' "[12]

Where a failure is caused by a defect in a relatively inaccessible part integral to the structure of the automobile not generally required to be repaired, replaced or maintained, it may be reasonable, absent misuse, to infer that the defect is attributable to the manufacturer.[13]

The circumstantial evidence in the instant case adequately supports a reasonable inference that the accident was probably caused by a defect attributable to the manufacturer. Both the Holloways and General Motors agree that the break in the ball joint assembly was fresh, metallurgically clean, and due to an impact failure. This suggests that the failure was not a result of fatigue or wear,[14] and, indeed, General Motors' experts testi-

[12] *Holloway v General Motors Corp, supra,* pp 634-635. The opinion continued:

"A defect in the wheel assembly involves the basic structural integrity of the vehicle and may not be discoverable during periodic maintenance. There is no suggestion that this wheel assembly had been tampered with or improperly maintained. A jury could reasonably conclude that there was a defect and that it was latent until the wheel assembly broke without warning causing the accident." *Id.,* p 636.

[13] "In cases where the defect is more or less in a 'sealed package', it is more plausible to believe that the defect was caused by the manufacturer than to believe that the package was opened after sale, the defect caused independently, and then the package resealed." *Meli v General Motors Corp,* 37 Mich App 514, 519; 195 NW2d 85 (1972).

This is but the converse of cases suggesting that in a proper case an inference of defect attributable to the manufacturer may be negatived by evidence that the product requires periodic maintenance. See *Meli v General Motors Corp, supra,* p 519; *Kupkowski v Avis Ford, Inc, supra,* p 166.

[14] Fatigue or wear does not necessarily relieve the manufacturer of responsibility; as stated in the opinion for reversal on prior submission:

"Although 'reasonable wear is a natural consequence of normal usage', it is not an adequate response to say that the vehicle is four years old, had been driven 47,000 miles and has had three owners.

fied that there were no signs of fatigue or wear. The fresh, metallurgically clean break, indicative of impact failure not attributable to fatigue or wear, tended also to negative lack of requisite maintenance, improper repair and even prior misuse as alternative causes. We are left with a reasonable probability that something was inherently wrong with the ball joint assembly such that it was unable to withstand an impact it should have withstood.[15]

Counsel for General Motors, in his oral argument before this Court on rehearing, said:

"It was a clean, fresh, metallurgically fresh, impact fracture. There is no dispute about that. Everybody that testified in the case admitted that it was a clean break, not a fatigue failure. And, therefore, if it is an impact failure, a clean break rather than something that wears down after 47,000 miles and six years and three owners, *there are only three alternatives: it was either designed*

Automobiles are manufactured and sold for use in excess of 50,000 miles. The consumer may justifiably rely on the basic integrity of the product. A sudden failure of the wheel assembly is likely to cause death or serious bodily injury. The industry cannot properly expect that when the warranty period runs out the consumer will either junk the automobile or have it disassembled, inspected for metal fatigue or defect and rebuilt part-by-part, or be deemed to have assumed the risk of latent and non-discernible structural defects.

"This is not to say that all parts of an automobile can be expected to function indefinitely and flawlessly without maintenance for the life of the vehicle. It is to say that the manufacturer who alone is in a position to guard against the risk is subject to liability for a life-threatening latent structural defect which ticks away like a time bomb with every mile driven." *Holloway v General Motors Corp, supra,* pp 634-635.

[15] A General Motors expert testified that the automobile was designed and manufactured to travel on roads even worse than the one where the accident occurred.

The question of what constitutes "normal use" is normally for the jury to resolve. *Snider v Bob Thibodeau Ford, Inc, supra,* p 716.

In a somewhat analogous situation, the rule is that a plaintiff need not prove which person among alternative negligent tortfeasors caused his injury. See *Summers v Tice,* 33 Cal 2d 80; 199 P2d 1 (1948); Prosser, *supra,* § 41, pp 243-244.

*improperly, or the material that was used was in some
way inadequate for the expected life of the vehicle, or
there was some combination of design and material."*
(Emphasis supplied.)

Common to each alternative is that it is attributa-
ble to the manufacturer and indicates a product
defect.

## V

On rehearing, General Motors principally argues
that a plaintiff does not sustain his burden of proof
unless he identifies the specific cause of the defect.
It contends that the Holloways must demonstrate
which of the possible alternatives (design, mate-
rial, assembly or a combination) was the precise
cause of the failure, or be barred from recovery. It
advances the policy argument that one of the
purposes of the tort law is to encourage those
engaged in activity which causes injury to adopt
remedial measures to avoid so injuring other per-
sons. If in truth there was a defect in manufac-
ture, General Motors needs specific identification
of the cause so that it can effect corrective mea-
sures.

Acknowledging that encouraging tortfeasors to
adopt corrective measures is one of the purposes of
the tort law, another purpose is to compensate
injured persons. It is the injury inflicted on the
plaintiff that entitles him to a remedy, not his
skill in discovering precisely where defendant's
manufacturing process went wrong.

Just as a plaintiff injured in an automobile
collision need not identify a character or other
personality defect which caused the defendant to
drive negligently, either to educate him or others
so that remedial measures may be adopted or to

facilitate governmental determination of whether he should be permitted to continue to drive, neither need a person injured by product failure identify the specific defect.

As stated in *Bronson v J L Hudson Co*, 376 Mich 98, 102-103; 135 NW2d 388 (1965), where the Court acknowledged that the specific irritant had not been identified:

"In this regard, the case does not differ from some food poisoning cases: you eat and you get sick and what made you sick was something in the food. What the poison was may be impossible to identify. In this case, the favorable view of plaintiffs' proofs is that the new, unwashed slip (that is unchanged from time of purchase) bought and immediately worn close to the body with a nearly immediate skin reaction contained an irritant which caused Mrs. Berke's dermatitis. Defense proofs may well explode the inference, but standing alone it is neither fanciful or conjectural. Add to the hypothesis, of course, plaintiffs' other proofs: clothes worn that day (other than the slip) were ones usually worn; diet and habits on the day in question were usual and ordinary; no previous history of rash, dermatitis, or allergy. Upon such proofs, the reasonable mind could legitimately infer that the one new element in Mrs. Berke's life at that time, the new slip, was directly linked with her injury. The reasonable mind now demands explanation. This is the task of defendant."[16]

Moreover, even if the specific cause is identified,

---

[16] In *Pohlod v General Motors Corp*, 40 Mich App 583, 588; 199 NW2d 277 (1972), a case similar to the present one, the plaintiffs claimed that a defective front ball joint caused their vehicle to go out of control. The evidence in that case only established that the "ball joint on the vehicle was defective in design, manufacture *or* assembly". (Emphasis supplied.) Nonetheless, the Court held that plaintiffs had made out a prima facie case. See, also, *Greco v Bucciconi Engineering Co, supra; Tweedy v Wright Ford Sales, Inc*, 64 Ill 2d 570; 357 NE2d 449 (1976); *Farmer v International Harvester Co, supra; Bollmeier v Ford Motor Co, supra; MacDougall v Ford Motor Co, supra; Henningsen v Bloomfield Motors, Inc, supra; Jarnot v Ford Motor Co*, 191 Pa Super 422; 156 A2d 568 (1959).

it may not be possible to adopt measures which would prevent recurrence of the failure—it may be that such failures occur irregularly and unpredictably, however great the care exercised to prevent occurrence.

Finally, General Motors suggests that even if a nonspecific defect has been circumstantially proven, "it is the duty of the plaintiff to prove by the most accurate evidence that is reasonably available to him the particular defect or act or omission which to him was the cause of the injury for which he would recover". *Schedlbauer v Chris-Craft Corp, supra,* p 231. The Court in *Schedlbauer* suggested that the plaintiff might have been at fault in not retrieving an allegedly defective fuel pump from the water, thereby precluding examination of the pump by the defendant.

General Motors asserts that the Holloways' access to the ball joint assembly, coupled with their failure to call a witness expert in metallurgy or automobile design, constituted a failure to prove their case by the most accurate evidence reasonably available.

While the plaintiff in *Schedlbauer* failed to produce the allegedly defective part, the Holloways produced the ball joint assembly so that both sides would have access to it. Production of the ball joint assembly enabled General Motors to present a metallurgical view of the matter. It did so. Metallurgical experts called by it opined that the break was fresh, metallurgically clean and due to an impact failure, not attributable to fatigue or wear, a view of the matter consistent with and, indeed, probative of the Holloways' theory of manufacturing defect.[17]

---

[17] The Holloways have not made any specific factual assertions about the ball joint assembly which are disputed by General Motors.

The Holloways were at liberty to establish that there was a reasonable probability of a manufacturing defect in the assembly by direct *or* circumstantial evidence. A manufacturing defect can be proved by circumstantial evidence without expert opinion testimony.[18] Accordingly, the Holloways were not under an obligation to present a metallurgist's view of the matter.

Reversed and remanded for a new trial.

KAVANAGH, C.J., and WILLIAMS and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.

FITZGERALD, J. *(concurring in result for remand).* We concur in the result of Justice LEVIN's opinion because, upon rehearing, we have become persuaded that there was a question of fact upon which reasonable minds could differ. A directed verdict on behalf of defendant was therefore, improper.

We find probative the evidence presented by plaintiffs' witnesses that the break in the ball joint assembly occurred on the roadway before the driver lost control of the automobile, rather than after the automobile left the roadway and collided with a ditch and then a utility pole. In fact, General Motors, for purposes of the rehearing, conceded that the break occurred on the roadway. In addition, there was uncontroverted evidence that the break in the ball joint assembly was fresh and metallurgically clean and caused by an impact failure rather than fatigue or wear. Further, defendant's expert testified that the automobile was

---

[18] 32A CJS, Evidence, § 1039, pp 748-761; 30 Am Jur 2d, Evidence, § 1091, pp 248-252.

In *Brownell v White Motor Corp,* 260 Or 251, 258-259; 490 P2d 184, 187; 51 ALR3d 1, 7 (1971), the Court held that circumstantial proof of the existence of a defect is permissible even when the product is not destroyed or otherwise unavailable.

designed to travel on roads even worse than the road on which the accident occurred. From this evidence, we believe that a jury question arises concerning a possible manufacturing defect in this particular ball joint assembly.

Accordingly, we find, after rehearing, that defendant was not entitled to a directed verdict since there appears to have been a genuine question of fact upon which reasonable minds could differ.

We concur in the remand.

COLEMAN and RYAN, JJ., concurred with FITZGERALD, J.