VANDERBERG v GENERAL MOTORS CORPORATION

Docket Nos. 77-2616, 77-2617. Submitted January 2, 1980, at Grand Rapids.—Decided April 21, 1980. Leave to appeal applied for.

John L. Vanderberg was injured and his wife, Yvonne V. Vanderberg, was killed when the automobile which Mr. Vanderberg was driving left the roadway and struck a concrete abutment. The automobile was manufactured by General Motors Corporation and was leased to Vanderberg by Boylan Buick, Inc., doing business as Boylan Leasing Co., under a full maintenance lease. Vanderberg alleges that carbon monoxide from the automobile's exhaust leaked into the passenger compartment, causing him to lose consciousness, and thus lose control of the vehicle. He brought actions, on his own behalf and as executor of his wife's estate, against General Motors alleging breach of an implied warranty in the manufacture of the automobile and against Boylan alleging breach of implied warranty in leasing a defective vehicle and negligence in failing to discover the defect during periodic maintenance of the vehicle. At the close of the plaintiff's proofs the Kalamazoo Circuit Court, Patrick H. McCauley, J., directed verdicts in favor of both defendants. Plaintiff appeals, alleging error in the exclusion of certain evidence and in the granting of the directed verdicts. *Held:*

1. The exclusion of testimony of the plaintiff's physician regarding the quantity of carbon monoxide in the plaintiff's blood was error. The evidence is of a factual nature and is not an inadmissible diagnosis. This error is not grounds for reversal, however, because other competent evidence supported the plaintiff's claim of carbon monoxide poisoning.

2. The results of a test made on the automobile's exhaust

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 818 *et seq.*, 825 *et seq.*

61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 198.

[2] 29 Am Jur 2d, Evidence § 818.

[3] 29 Am Jur 2d, Evidence § 824.

[4, 7] 75 Am Jur 2d, Trial § 463.

[5] 63 Am Jur 2d, Products Liability §§ 5, 9, 22.

[6] 57 Am Jur 2d, Negligence §§ 32 *et seq.*, 64, 127, 128.

63 Am Jur 2d, Products Liability §§ 22, 25 *et seq.*

system after the accident were properly excluded from evidence because the test was not made under conditions similar to those in existence at the time of the accident.

3. Because the evidence indicates two or more plausible explanations of how carbon monoxide might have leaked into the passenger compartment, the selection by the jury of one explanation over another would be based not on a reasonable inference but on conjecture. The plaintiff did not meet his burden of proof, and the trial court properly directed verdicts for the defendants.

Affirmed.

D. F. WALSH, P.J., dissented. He would hold that there was sufficient circumstantial evidence for the case to have been submitted to the jury, both on the question of whether the exhaust system contained a manufacturing defect and the question of negligent maintenance. He would reverse and remand.

OPINION OF THE COURT

1. EVIDENCE — WITNESSES — PHYSICIANS — ANALYTICAL DATA.

A treating physician should be permitted to testify with regard to the analytical data underlying his diagnosis; testimony regarding the quantity of carbon monoxide in an accident victim's blood is a factual statement of an observed condition, not an inadmissible diagnosis, and exclusion of such testimony is error.

2. EVIDENCE — TEST RESULTS — JUDGE'S DISCRETION — APPEAL.

The admission or exclusion of test results is within the trial court's discretion, and the trial court's ruling in this regard will not be interfered with unless an abuse of discretion is clearly evident.

3. EVIDENCE — TESTING PROCEDURES.

It is generally required that testing procedures be conducted under conditions similar to the conditions which existed at the time of the occurrence in question.

4. TRIAL — DIRECTED VERDICT — APPEAL.

A trial court may not direct a verdict when a fact question exists upon which reasonable persons may differ; in reviewing a trial court's decision to direct a verdict in favor of a defendant the Court of Appeals will view the testimony in the light most favorable to the plaintiff and draw the reasonable inferences therefrom which are in the plaintiff's favor.

5. PRODUCTS LIABILITY — DIRECTED VERDICT — EVIDENCE — DEFECT
    — CAUSE OF DEFECT.

A plaintiff in a products liability case, in order to withstand a
motion for a directed verdict for the defendant, must produce
evidence which shows (1) a defect, (2) a causal connection
between the defect and the plaintiff's injuries, and (3) that the
defect is attributable to the defendant; the specific cause of the
defect need not be isolated, but sufficient evidence, either direct
or circumstantial, must be presented from which the jury could
reasonably infer that some defect in manufacture caused the
accident.

6. NEGLIGENCE — NEGLIGENT MAINTENANCE — EVIDENCE.

A plaintiff claiming negligent maintenance of a product against a
defendant who undertook to maintain the product must, in
order to avoid a directed verdict for the defendant, produce
evidence of a duty owed to plaintiff by defendant, a breach of
that duty, and a causal relationship between the breach of duty
and the injuries suffered by the plaintiff.

DISSENT BY D. F. WALSH, P.J.

7. PRODUCTS LIABILITY — EXISTENCE OF DEFECT — DIRECTED VERDICT
    — EVIDENCE.

*The existence of a defect, attributable to the manufacturer, in an
automobile's exhaust system as well as negligent maintenance
of that exhaust system are provable by circumstantial evidence;
the test for determining whether or not a directed verdict is
proper is whether the evidence takes the case out of the realm
of conjecture and supports legitimate inferences from established facts.*

*Reamon, Williams, Klukowski, Wood & Drew,
P.C.,* for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by
*Donald E. Shely* and *Kathleen McCree Lewis)* and
*Seymour, Seymour, Conybeare & Straub (Otis M.
Smith* and *John P. Raleigh,* of counsel), for General Motors Corporation.

*Lilly, Piatt & Doyle,* for Boylan Buick, Inc.

Before: D. F. Walsh, P.J., and R. B. Burns and J. H. Gillis, JJ.

R. B. Burns, J. On March 19, 1970, plaintiff, John L. Vanderberg, was driving at a speed of approximately 70 miles per hour along I-94 in Berrien County. While traveling in the right lane of the roadway, plaintiff came upon a slower moving tractor-trailer truck. Plaintiff signaled and pulled out to pass the truck. When the truck driver flashed his lights to indicate that plaintiff was safely passed, plaintiff again signaled and re-entered the right lane. Plaintiff's vehicle failed to straighten out in the right lane. The car straddled the guardrail and rode it into an underpass. Plaintiff's wife, a passenger in the vehicle, was killed instantly and plaintiff was seriously injured.

Plaintiff alleges that the accident occurred because carbon monoxide leaked from the exhaust system of the vehicle, a Buick Electra, into the passenger compartment, causing plaintiff to lose consciousness. Plaintiff brought suit against defendant General Motors Corporation on claims that the defendant had breached an implied warranty by producing a defective vehicle and that the defendant had been negligent in failing to design, engineer and manufacture an exhaust system that would safely carry exhaust fumes away from the vehicle's passenger compartment.

The Vanderberg automobile was leased from defendant Boylan Buick under a full maintenance lease. Against defendant Boylan plaintiff asserted claims that the defendant had breached an implied warranty in leasing a defective vehicle and that the defendant was negligent in failing to discover areas of leakage when defendant made periodic repairs and maintenance of the vehicle.

The matter was tried before a jury. At the close of plaintiff's proofs, the trial court directed verdicts in favor of both of the defendants. Plaintiff appeals.

Plaintiff maintains that the trial court erred in excluding evidence which plaintiff sought to introduce in support of his claim that he suffered carbon monoxide poisoning. The court admitted into evidence a hospital report which indicated that carbon monoxide was found in plaintiff's blood. This ruling was based on a finding that the evidence was "qualitative" and therefore admissible as a description of a physical condition. The court, however, excluded the deposition testimony of plaintiff's physician to the extent that the doctor relied on the records of any quantitative carbon monoxide tests. The court held that this "quantitative" evidence was a diagnosis and thus inadmissible.

We do not agree that the "quantitative" test results were a diagnosis. The evidence appears to be a factual statement of an observed condition and not an inadmissible diagnosis. Moreover, the treating physician should have been permitted to testify with regard to the analytical data underlying his diagnosis. *Alexander v Covel Manufacturing Co,* 336 Mich 140; 57 NW2d 324 (1953). Nevertheless, the error does not constitute grounds for reversal as there was other competent evidence which supported plaintiff's claim that he was afflicted with carbon monoxide poisoning.

Plaintiff also maintains that error occurred when the trial court struck testimony regarding a test that was performed on the Vanderberg vehicle's exhaust system. Shortly after the alleged incident, Dr. Charles Nagler, a forensic science expert, conducted a test to determine whether

there were leaks in the vehicle's exhaust system. The test procedure was similar to that used to identify leaks in automobile tires, and Dr. Nagler testified that when using this test he observed leaks in the exhaust system.

Though the only relevancy the leak test could have had would be as an indicator that the areas that leaked could emit carbon monoxide in the normal operation of the vehicle, the test was made under conditions which did not attempt to simulate the operation of the system during actual driving conditions. Based on the test's failure to simulate actual vehicle operation conditions, the trial court granted defendants' motion to strike the testimony regarding the test.

The admission or exclusion of test results is within the trial court's discretion. We do not interfere with the court's ruling in this regard unless an abuse of that discretion is clearly evident. *Smith v Grange Mutual Fire Ins Co of Michigan,* 234 Mich 119, 127; 208 NW 145 (1926). As it is commonly required that testing procedures be conducted under conditions similar to those in the occurrence in question, the trial court did not abuse its discretion in striking Dr. Nagler's testimony regarding the test. *Elliott v A J Smith Contracting Co, Inc,* 358 Mich 398, 417; 100 NW2d 257 (1960), *Smith, supra,* 127.

Plaintiff's final and principal claim on appeal is that the trial court erred in granting directed verdicts in favor of both defendants.

In reviewing the decision of the trial court to grant the motions for directed verdict, we bear in mind that:

"The jury, not the trial judge, is the trier of fact. Whenever a fact question exists, upon which reasonable

persons may differ, the trial judge may not direct a verdict. Conversely, when no fact question exists, the trial judge is justified in directing a verdict." *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975).

In order to determine whether a fact question exists, this Court will "view the testimony in the light most favorable to the plaintiff and draw the reasonable inferences therefrom which are in his favor". *Caldwell, supra,* 407. We do so because, as the Supreme Court long ago stated, plaintiff:

"* * * had a right to ask the jury to believe the case as he presented it; and, however improbable some portions of his testimony may appear to us, we can not say that the jury might not have given it full credence. It is for them, and not for the court to compare and weigh the evidence." *Detroit & M R Co v Van Steinburg,* 17 Mich 99, 117 (1868), cited at *Caldwell, supra,* 407.

To withstand the motions for directed verdict in this case, plaintiff must have produced evidence of a defect in the vehicle's exhaust system, evidence which shows a causal connection between the defect and injuries suffered by plaintiff, and evidence which establishes that the defect is attributable to either or both of the defendants.[1] *Caldwell, supra,* 410. Plaintiff need not isolate the specific cause of the defect to avoid a motion for directed verdict, but he must present sufficient evidence, either circumstantial or direct, "from which the jury could reasonably infer that some defect in manufacture caused the accident". *Holloway v General Motors Corp (On Rehearing),* 403 Mich 614, 618; 271 NW2d 777 (1978).

With respect to the claim of negligent mainte-

---

[1] These elements apply not only to plaintiff's product liability claims based on breach of warranty but also to his product liability claim against General Motors which sounds in negligence.

nance against defendant Boylan, plaintiff must produce evidence of a duty owed by Boylan to plaintiff, evidence of a breach of that duty by Boylan, and evidence showing a causal relationship between the breach of duty and injuries suffered by plaintiff.

Defendants assert that the proofs offered by plaintiff support neither a reasonable inference that a defect existed nor a reasonable inference that a defect attributable to the manufacturer or lessor caused the accident. Defendant Boylan further maintains that the proofs do not support a reasonable inference that negligent maintenance by it caused the accident. We agree.

Based on the evidence presented, the jury could have reasonably determined that plaintiff was overcome by carbon monoxide poisoning and that this condition caused plaintiff to black out, in turn causing plaintiff's vehicle to leave the roadway and collide with the underpass. But at this point, plaintiff's proofs meet an unbridgeable gap. There is no evidence from which the jury could reasonably infer that emissions traveled from the vehicle's exhaust system into the passenger compartment because of a defect inherent in the exhaust system. Unlike the ball joint assembly discussed in *Holloway, supra,* the exhaust system is expected to wear out and be replaced. Because of its exposed position it is also subject to sudden damage from impact with objects on the road. A failure of the system to function properly does not in itself necessarily establish a latent structural defect. The accident may have occurred because of damage to the exposed exhaust system after the vehicle left the hands of the manufacturer, defendant General Motors, and after the last maintenance or repair conducted by defendant Boylan.

Since, after all the evidence is considered, there exist two or more equally plausible explanations as to how carbon monoxide might have leaked into the passenger compartment, the selection by the jury of one explanation over the other would be based not on a reasonable inference but on conjecture. See *Meli v General Motors Corp,* 37 Mich App 514, 518; 195 NW2d 85 (1972).

The trial court was correct in ruling that plaintiff had not met his burden of proof in this action.

Affirmed. Costs to defendants.

J. H. GILLIS, J., concurred.

D. F. WALSH, P.J., *(dissenting).* I must dissent. The existence of a defect, attributable to the manufacturer, in an automobile's exhaust system as well as negligent maintenance of that exhaust system are provable by circumstantial evidence. *Holloway v General Motors Corp (On Rehearing),* 403 Mich 614; 271 NW2d 777 (1978), *Caldwell v Fox,* 394 Mich 401; 231 NW2d 46 (1975). The test is whether the evidence takes the case out of the realm of conjecture and supports legitimate inferences from established facts. *Weisenberg v Village of Beulah,* 352 Mich 172; 89 NW2d 490 (1958).

In this case it seems to me that there is convincing evidence that a defective exhaust system in the leased 1969 Buick Electra driven by plaintiff, John L. Vanderberg, caused the introduction of carbon monoxide gas into the passenger compartment of the vehicle, and that the presence of the carbon monoxide caused Vanderberg to pass out and lose control of the vehicle with the result that the vehicle left the paved portion of the highway and struck a concrete overpass abutment.[1]

---

[1] The testimony of plaintiff Vanderberg together with that of the

The automobile was only 13 months old, had been driven less than 19,000 miles and had been regularly serviced by Boylan Buick, Inc., under the terms of the leasing agreement. It may be, as the majority points out, that an automobile's factory installed exhaust system cannot be expected to last for the life of the automobile. A jury could reasonably conclude, however, that an exhaust system which wears out to the point of serious and dangerous malfunction after just 13 months of normal use and in less than 19,000 miles was defective when it was installed at the factory.

Certainly, as the majority also points out, the defective condition of the exhaust system could have been caused by something other than normal use. Someone may have tampered with the system or the car may have been in a previous accident. In this case, however, there is no evidence whatsoever that the exhaust system was subjected to any potentially damaging condition other than normal use. Moreover, the plaintiff did not have the burden of eliminating every other plausible explanation for the defect. As the Supreme Court stated in *Holloway v General Motors Corp (On Rehearing)*, *supra*, 621-622:

> "A plaintiff has the burden of establishing that when the product left the manufacturer it was defective. He is not, however, obliged to eliminate all possible causes of the accident consistent with the view that there was no manufacturing defect. He sustains his burden when

medical experts established that the carbon monoxide level in Vanderberg's blood immediately after the accident was in excess of 30% and possibly as high as 40% to 50% and that Vanderberg's only exposure to an established source of significant levels of carbon monoxide was the exhaust system of the Buick Electra manufactured by defendant General Motors and leased from and maintained by defendant Boylan Buick, Inc.

he establishes with direct or circumstantial evidence a reasonable probability that the defect is attributable to the manufacturer.

"On a motion for directed verdict, the question is whether it is reasonable to infer from the evidence, direct or circumstantial, that the accident was probably caused by a defect attributable to the manufacturer. Questions of comparative probability are to be resolved by the trier of fact. As stated in *Schoepper v Hancock Chemical Co,* 113 Mich 582, 586, 589; 71 NW 1081 (1897), and since reaffirmed in *Schedlbauer v ChrisCraft Corp,* 381 Mich 217, 230-231; 160 NW2d 889 (1968):

" 'It is true that where an injury occurs that cannot be accounted for and where the occasion of it rests wholly in conjecture, the case may fail for want of proof. * * * But such cases are rare, and that rule should never be so extended as to result in a failure of justice, or in denying an injured person a right of action where there is room for balancing the probabilities, and for drawing reasonable inferences better supported upon one side than upon the other. * * * *[T]he question of whether the inference suggested by the plaintiff's theory is the correct one, or whether it was sufficiently rebutted, was for the jury.'* (Emphasis supplied.)"

Plaintiff Vanderberg testified that during the winter of 1969-1970 he became fatigued during long trips in the leased Buick. From this testimony the jury could find that the defective condition in the exhaust system existed prior to the end of December 1969. Defendant Boylan had the car for inspection and servicing on December 30, 1969, and January 23, 1970. There was sufficient circumstantial evidence, therefore, for the jury to conclude that defendant Boylan was negligent in failing to repair the defective exhaust system.

I would reverse the trial court and remand for a new trial.