KENKEL v THE STANLEY WORKS

Docket No. 229179. Submitted January 13, 2003, at Detroit. Decided May
    20, 2003, at 9:00 A.M. Leave to appeal sought.

Rosemarie Kenkel brought an action in the Wayne Circuit Court
    against The Stanley Works and Rite Aid of Michigan, Inc., seeking
    damages for injuries sustained when automated sliding-glass doors
    manufactured and installed by The Stanley Works (hereafter the
    defendant) in a Rite Aid store allegedly closed on the plaintiff. The
    court, Kaye Tertzag, J., denied motions by the defendant for a
    directed verdict with regard to the plaintiff's claim of breach of
    implied warranty and granted the defendant's motion for a directed
    verdict with regard to the plaintiff's claims of negligent mainte-
    nance or service. The jury returned a verdict in favor of the plain-
    tiff with regard to the claim of breach of implied warranty. The
    court denied the defendant's motion to reduce the plaintiff's
    noneconomic damages to conform to the requirements of MCL
    600.2946a, ruling the statute to be unconstitutional. The court then
    denied the defendant's motion for judgment notwithstanding the
    verdict. The Stanley Works appealed.

The Court of Appeals *held*:

1. The plaintiff's concession that the product was neither negli-
    gently designed nor negligently manufactured does not defeat her
    claim of breach of implied warranty. A product may not be reason-
    ably fit for its intended or foreseeable use even though the product
    is technically not defective. The plaintiff presented sufficient evi-
    dence to permit the jury to draw the inference that the doors were
    defective because they did not fulfill their intended use to accom-
    modate safe entry to and exit from the store. The plaintiff
    presented sufficient evidence that the defect was attributable to the
    defendant. The defendant's motions for a directed verdict on the
    plaintiff's claim of breach of implied warranty were properly
    denied. The court properly instructed the jury on the plaintiff's
    claim of breach of implied warranty.

2. The plaintiff submitted sufficient evidence to establish a prima
    facie case. The court properly denied the defendant's motion for
    judgment notwithstanding the verdict.

3. The court erred in finding that MCL 600.2946a imposes an unconstitutional infringement on a plaintiff's right to a jury trial and violates the principles of equal protection and separation of powers. The statute is rationally related to legitimate governmental interests. The statute does not violate due-process principles or Const 1963, art 4, § 29. The statute does not infringe on the Supreme Court's rulemaking authority.

Affirmed in part, reversed in part, and remanded.

1. PRODUCTS LIABILITY — BREACH OF IMPLIED WARRANTIES.

A product's lack of fitness for its intended use amounts to an actionable defect for purposes of a claim of breach of implied warranty; a product that "technically" is not defective may still be found to be not reasonably fit for its intended or foreseeable use.

2. PRODUCTS LIABILITY — BREACH OF IMPLIED WARRANTIES.

A plaintiff pursuing a claim of breach of implied warranty is not required to identify the precise defect in the product unless there are multiple actors to whom a malfunction could be attributed; the plaintiff is not required to demonstrate whether the defect was caused by design, materials, assembly, or a combination of such factors.

3. PRODUCTS LIABILITY — DEFECTS — EVIDENCE.

A demonstrable malfunction generally is clear evidence of a defect in a products-liability action; a jury may infer the existence of a defective condition from circumstantial evidence alone; both circumstantial and direct evidence may be used to demonstrate that a defect existed when a product left the manufacturer's control.

4. PRODUCTS LIABILITY — CONSTITUTIONAL LAW.

The provisions of MCL 600.2946a that limit the amount of recovery for noneconomic damages in a products-liability action do not create an arbitrary distinction between plaintiffs bringing products-liability actions and plaintiffs bringing negligence actions; the statute does not violate equal-protection and due-process guarantees, or the constitutional prohibition regarding local or special acts; the statute is not purely procedural and does not conflict with MCR 2.508 or infringe on the rulemaking authority of the Supreme Court (Const 1963, art 4, § 29).

*Granzotto & Nicita, P.C.* (by *Mark Granzotto*), and *Gursten, Koltonow, Gursten, Christensen & Raitt, P.C.* (by *Robert M. Raitt*), for Rosemarie Kenkel.

*Cothorn & Associates, P.C.* (by *John A. Cothorn* and *Suzanne C. Stanczyk*) (*Law Offices of Mary M. Otto*, by *Mary M. Otto*, of counsel), for The Stanley Works.

Before: SMOLENSKI, P.J., and WILDER and SCHUETTE, JJ.

WILDER, J. In this products-liability action, defendant, The Stanley Works, appeals a judgment of $1,549,270.90 in favor of plaintiff following a jury trial.[1] We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTS AND PROCEEDINGS

On April 14, 1997, plaintiff went shopping at the Rite Aid store on Greenfield in Dearborn. As plaintiff approached the automated sliding-glass doors to leave the store, she waited for a customer in front of her to leave, hoping to get a "full cycle" of the time allotted each time the doors opened and closed.[2] Plaintiff believed that the doors at the Greenfield Rite Aid closed more quickly than other automated sliding doors.

As plaintiff passed through the doorway, the doors closed on her, trapping her sideways in a standing position. When the doors suddenly opened, plaintiff

---

[1] The jury awarded plaintiff $1,496,703.70 in economic and noneconomic damages, to which the trial court added $52,567.20 in prejudgment interest.

[2] Plaintiff, then aged sixty-nine, has used crutches to assist her in walking since childhood because of rheumatoid arthritis. She mistakenly believed that the doors were on a timer and, because she walks rather slowly, wanted the benefit of the full amount of time permitted to proceed through the doorway.

fell to the ground, landing on her back. Although plaintiff did not suffer any pain from being trapped between the doors, she felt tremendous pain when she fell to the ground. Another individual at the store told the store manager, Duane Boyle, that a woman was lying on the floor in the store vestibule. Boyle attended to plaintiff and called an ambulance at her request. Since her fall, plaintiff has suffered from constant back pain. She cannot drive and is limited to walking short distances.

Defendant[3] manufactured the door system in use at the Greenfield Rite Aid store, the Stanley Dura-Glide 3000. The doors were installed in 1995, while the store was being built, and were fine-tuned in January 1996, before the store opened. To accommodate safe entry and exit, the doors were equipped with two sensor systems. Microwave motion detectors, VEA or SUO 50 detectors, were affixed to both sides of the doors. When an individual approaches the doors, the motion detectors cause the doors to open. An overhead "presence" sensor system, the Stan-Guard, emits an infrared beam that prevents the doors from closing when an obstruction is in the doorway. American National Standards Institute standards require the overhead presence sensor to detect the presence of a person or object twenty-eight inches from the floor. The beam emitted by the Stan-Guard sensor covers a thirty-inch-wide path within the threshold. The zones covered by the Stan-Guard and the microwave motion detectors overlap by ten inches, so at least one sen-

---

[3] The trial court granted defendant Rite Aid's motion for a directed verdict on plaintiff's claims of negligence against it. Plaintiff's claims against Rite Aid are not pertinent to this appeal. Throughout this opinion, "defendant" refers to The Stanley Works.

sor detects the individual at any location in the threshold. The doors are also equipped with a third safety feature. If the doors strike any object, circuitry in the system causes the doors to reopen, as long as the doors are more than four inches from their final closing point. Additionally, if the doors malfunction, they are designed to automatically open or remain open.

In count II of her first amended complaint, plaintiff alleged negligence against defendant, claiming that defendant failed to design and manufacture doors that operated in a safe and reasonable fashion and that defendant failed to maintain the system. In count III, plaintiff alleged breach of implied warranty by defendant, claiming that the doors were not reasonably fit for their intended and reasonable use because they closed on plaintiff and failed to immediately reopen. Before trial, plaintiff withdrew her claim that the doors were negligently designed or manufactured.[4]

Don VanKirk, an engineer, testified for plaintiff as an expert witness at trial. VanKirk examined the doors at the Greenfield Rite Aid store in December 1998. Although the doors opened and closed properly as his associate walked through the threshold, the doors closed and remained closed when VanKirk tested the sensors by alternately placing a four-inch foam ball, a rubber cone, and an attaché case in the threshold. Because VanKirk was not aware of the presence of the Stan-Guard overhead sensor, he did not inspect it. Additionally, he did not know that any

---

[4] Although the record does not contain an order dismissing this claim, it is clear from the trial transcript that both parties treated the claim as having been dismissed.

obstruction placed in the doorway needed to be twenty-eight-inches high in order for the sensor to detect it. Because the doors stayed closed rather than reversing themselves, however, he opined that the electronic circuitry imbedded in the hardware did not function properly. Not until he or his associate "broke the beam" of the motion detectors did the doors open again. This scenario, he stated, was consistent with plaintiff's account of being trapped between the doors and that another individual passed through the doors right after plaintiff fell. Because the doors would close and hold an object in place between them, he believed that the doors were not fit to permit pedestrians to move in and out of the store safely.

At the close of plaintiff's proofs, defendant moved for a directed verdict, claiming that plaintiff admitted that the product had not been defectively designed or manufactured and that, without evidence of a defect, plaintiff could not prevail on her claim of breach of an implied warranty. Plaintiff opposed the motion, asserting that she was not required to establish a design or manufacturing defect in order to establish that this particular Dura-Glide system was not fit for its intended purpose, and that defendant's argument was, instead, pertinent to the claim of negligent design and manufacturing that had been dismissed before trial. The trial court denied defendant's motion, finding that plaintiff's claim of breach of implied warranty is separate and distinct from a claim of defective design or manufacture.

Erik Arminiak, a service technician for Stanley Access Technologies, testified during defendant's case-in-chief. Arminiak testified that on April 22, 1997, he was called to the store to test the doors. He did

not find any problems with the doors during his visit. He tested the doors again on June 30, 1997, and again found no problems with their function. Following Arminiak's testimony, defendant renewed its motion for a directed verdict on plaintiff's claim of breach of implied warranty. The trial court again denied defendant's motion.

Alexander Mitchell, a former vice president of engineering for defendant and who had contributed to the development of the Dura-Glide 3000 system, testified that he tested the doors in September 1999. He stated that the doors exceeded the applicable safety requirements. He was not surprised, however, that the doors closed on the attaché case and foam ball because they were not tall enough to trigger the sensor. He stated that if the motion detectors and the Stan-Guard presence sensor were working at the time of plaintiff's fall, it would not have been possible for the doors to close on her. Conversely, if the doors closed on plaintiff as she alleged, they were not working as they were designed to work or the Stan-Guard was not properly adjusted. Following Mitchell's testimony, defendant moved for a directed verdict on plaintiff's claims of negligent maintenance or service, which the trial court granted.

The trial court charged the jury on plaintiff's claim of breach of implied warranty, reading SJI2d 25.21 and 25.22[5] to the jury over defendant's objection. The jury returned a verdict in plaintiff's favor, finding that

---

[5] The name of the jury instructions used in civil cases changed from "Standard Jury Instructions" to "Model Civil Jury Instructions," effective May 1, 2002. MCR 2.516(D). Because the Standard Jury Instructions were still in effect at the time of the trial in this case, we will use the abbreviation SJI2d to refer to the jury instructions given in this case.

defendant had breached the implied warranty of fitness and that plaintiff had suffered $1,496,703.70 in damages.

Following trial, plaintiff moved for entry of judgment in the amount of the verdict, plus interest, costs, and attorney fees. Defendant, however, contended that the trial court should reduce plaintiff's noneconomic damages to conform to the requirements of MCL 600.2946a. Plaintiff argued that MCL 600.2946a was unconstitutional, and, relying on plaintiff's brief and oral argument on the issue, the trial court agreed and entered an order finding that MCL 600.2946a was unconstitutional. Thereafter, defendant moved for judgment notwithstanding the verdict (JNOV), claiming that because plaintiff admitted that neither a design nor manufacturing defect existed, her claim of breach of implied warranty must fail. The trial court, again adopting the rationale articulated in plaintiff's brief and oral argument, denied defendant's motion for JNOV. This appeal ensued.

## II. STANDARDS OF REVIEW

This Court reviews de novo the trial court's decisions on a motion for a directed verdict and a motion for judgment notwithstanding the verdict. *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 395; 628 NW2d 86 (2001). We review the evidence and all legitimate inferences arising from the evidence in the light most favorable to the nonmoving party. *Wilkinson v Lee*, 463 Mich 388, 391; 617 NW2d 305 (2000). The motion should be granted only if the evidence fails to establish a claim as a matter of law. *Id.* We also review de novo claims of instructional error. *People v Hall*, 249 Mich App 262, 269; 643 NW2d 253

(2002). Finally, we review de novo questions concerning the constitutionality of a statute. *Phillips v Mirac, Inc*, 251 Mich App 586, 589; 651 NW2d 437 (2002). " 'A statute is presumed constitutional, unless its unconstitutionality is readily apparent.' " *Id.*, quoting *Tolksdorf v Griffith*, 464 Mich 1, 5; 626 NW2d 163 (2001).

### III. ANALYSIS

Defendant first claims that the trial court erred in denying its motion for a directed verdict because plaintiff did not prove that a defect existed in the Dura-Glide 3000. In a related argument, defendant asserts that the trial court erred in instructing the jury on plaintiff's claim of breach of implied warranty, because the evidence was insufficient to prove that the Dura-Glide system was unfit for its foreseeable use when it left defendant's control. We disagree. Contrary to defendant's assertions, plaintiff's concession that the product was neither negligently designed nor negligently manufactured is not fatal to her claim of breach of implied warranty. Claims of breach of implied warranty and negligence in manufacturing or design may require the same proofs in certain circumstances. *Bouverette, supra* at 395. However "the theories of negligence and implied warranty remain separate causes of action with different elements." *Id.*

> A breach of warranty claim tests the fitness of the product and requires that the plaintiff "prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which he complains." *Piercefield v Remington Arms Co*, 375 Mich 85, 98-99; 133 NW2d 129 (1965). Customarily, this defect can be found "regardless of the amount of care utilized by the man-

ufacturer." . . . On the other hand, a negligence claim tests
the defendant's conduct instead of the product to determine
whether it was reasonable under the circumstances. [*Greg-
ory v Cincinnati, Inc*, 450 Mich 1, 12; 538 NW2d 325
(1995).]

Throughout the trial in this matter, plaintiff asserted
that the Dura-Glide 3000 system installed in the
Greenfield Rite Aid store was defective because it did
not perform as intended. In a claim of breach of
implied warranty, the product's lack of fitness for its
intended use amounts to an actionable defect.[6]
*Bouverette, supra* at 396.

A product may not be reasonably fit for its
intended or foreseeable use even if the product is
"technically . . . not defective . . . ." *Bouverette, supra*
at 399 (finding that a verdict in the defendant's favor
on a negligence claim was not inconsistent with a ver-
dict in the plaintiff's favor on a claim of breach of
implied warranty). Moreover, a plaintiff pursuing a
claim of breach of implied warranty is not required to
identify the precise defect in the product unless there
are multiple actors to whom a malfunction could be
attributed.[7] *Caldwell v Fox*, 394 Mich 401, 410; 231

---

[6] As stated in *Bouverett*:

When a products liability action is premised on a breach of
implied warranty of fitness, the plaintiff must prove that a defect
existed at the time the product left the defendant's control, which
is normally framed in terms of whether the product was " 'reason-
ably fit for its intended, anticipated or reasonably foreseeable
use.' " [*Bouverette, supra* at 396, quoting *Gregory, supra* at 34,
quoting *Elsasser v American Motors Corp*, 81 Mich App 379, 384;
265 NW2d 339 (1978).]

[7] In the present case, defendant does not contend that the system was
manipulated in any way. Additionally, the only action any Rite Aid
employee took with regard to the doors was to turn them on and off and
check their operation.

NW2d 46 (1975); *Snider v Bob Thibodeau Ford, Inc,* 42 Mich App 708, 713; 202 NW2d 727 (1972); *Sundberg v Keller Ladder,* 189 F Supp 2d 671, 676 (ED Mich, 2002) (decided pursuant to Michigan law). Furthermore, the plaintiff is not required to demonstrate whether the defect was caused by "design, material, assembly or a combination . . . ." *Holloway v Gen Motors Corp (On Rehearing),* 403 Mich 614, 626; 271 NW2d 777 (1978). "It is the injury inflicted on the plaintiff that entitles him to a remedy, not his skill in discovering precisely where defendant's manufacturing process went wrong." *Id.*

The issue, therefore, is whether plaintiff presented sufficient evidence demonstrating that a defect attributable to defendant existed in the Dura-Glide system to the extent that a directed verdict was properly denied. *MASB-SEG Property/Casualty Pool, Inc v Metalux,* 231 Mich App 393, 399; 586 NW2d 549 (1998). We conclude that plaintiff presented sufficient evidence to warrant denial of defendant's motion for a directed verdict. "A demonstrable malfunction is generally clear evidence of a defect . . . ." *Snider, supra* at 713. Additionally, "[i]t is within the province of the jury to infer the existence of a defective condition from circumstantial evidence alone . . . ." *Caldwell, supra* at 410. In asserting that the evidence mandated a directed verdict in its favor, defendant emphasizes that no witness testified that the witness saw the doors close on plaintiff. Although the testimony of other witnesses may have been helpful to corroborate plaintiff's testimony, corroboration was unnecessary because plaintiff's testimony was sufficient to create a question of fact regarding whether the doors malfunctioned and closed on her. We note

that defendant's own expert acknowledged that if the doors closed on plaintiff as she claimed, some part of the system was not working properly. Plaintiff's expert testified that a malfunction in the circuitry likely caused the doors to fail to retract when they struck plaintiff. Together, plaintiff's testimony and the testimony of the parties' experts was sufficient to permit the jury to draw the inference that the doors were defective because they did not fulfill their intended use to accommodate safe entry to and exit from the store.[8] See *Bouverette, supra* at 396-397.

Plaintiff also submitted sufficient evidence that the defect was attributable to the manufacturer. Both circumstantial evidence and direct evidence may be used to demonstrate that the defect existed when the product left the defendant's control. *MASB-SEG, supra* at 399. As stated above, the evidence established that no one had altered the door system after the manufacturer installed it. Moreover, the electrical components of the sensor systems were contained in closed compartments. "Where a failure is caused by a defect in a relatively inaccessible part integral to the structure of the [product] not generally required to be repaired, replaced or maintained, it may be reasonable, absent misuse, to infer that the defect is attributable to the manufacturer." *Holloway, supra* at 624. Viewing the evidence in a light most favorable to plaintiff, we conclude that plaintiff presented sufficient evidence to withstand defendant's motion for a directed verdict and that the trial court appropriately

---

[8] Defendant also notes that plaintiff did not submit evidence demonstrating that the doors had previously malfunctioned in a similar manner. This fact does not defeat plaintiff's claim. *Holloway, supra* at 623-624.

instructed the jury on plaintiff's claim of breach of implied warranty.

Defendant also contends that the trial court erred in denying defendant's motion for JNOV. We disagree. Defendant argues that under the test articulated in *Skinner v Square D Co*, 445 Mich 153, 159-160; 516 NW2d 475 (1994), plaintiff failed to demonstrate that her injuries were caused by a defect attributable to defendant:

> [A] prima facie case for products liability requires proof of a causal connection between an established defect and injury. . . . [T]he plaintiff's evidence is sufficient if it "establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." [*Id.*, quoting *Mulholland v DEC Int'l Corp*, 432 Mich 395, 415; 443 NW2d 340 (1989).]

Defendant further relies on the *Skinner* Court's statement that "the mere happening of an unwitnessed mishap neither eliminates nor reduces a plaintiff's duty to effectively demonstrate causation . . . ." *Skinner, supra* at 163.

However, as we stated above, plaintiff's testimony was sufficient to establish causation. She testified at trial that the doors closed on her, held her in their grasp, and suddenly retracted, causing her to fall to the ground. The facts in *Skinner* are distinguishable from the facts in this case. There, the plaintiffs' decedent died almost immediately after the product[9] allegedly malfunctioned and before he was able to tell anyone precisely what had occurred in the moments

---

[9] The product at issue was an electrical switch that was part of a homemade tumbling machine used to polish metal parts. *Id.* at 157.

before his death. *Id.* at 157-158. Thus, the plaintiffs' theory of causation in *Skinner* was merely a possibility among other possibilities that were equally as probable, and the evidence in that case was speculative and insufficient to avoid summary disposition. *Id.* at 171-172.

In this case, however, plaintiff's testimony provided the jury with a fact-based account of the incident that caused her injuries. Plaintiff was not required to demonstrate by this testimony the precise defect that caused the doors to malfunction. *Snider, supra* at 713. Nevertheless, VanKirk's opinion that a problem in the circuitry prevented the doors from opening once they closed on plaintiff is additional evidence of a defect that supports plaintiff's testimony regarding causation. The jury was free to accept or reject the testimony of plaintiff and VanKirk in reaching its verdict. Therefore, we find that plaintiff submitted sufficient evidence to establish a prima facie case and that the trial court properly denied defendant's motion for judgment notwithstanding the verdict.[10]

Finally, defendant asserts that the trial court erred in finding that MCL 600.2946a, by limiting the recovery of noneconomic damages in products-liability actions, imposes an unconstitutional infringement on plaintiff's right to a jury trial and violates equal-pro-

---

[10] Defendant also briefly argues, in connection with its claim that the trial court should have granted its motion for JNOV because plaintiff's causation evidence was speculative, that the jury's verdict was against the great weight of the evidence. When a litigant shows that a verdict is against the great weight of the evidence, the litigant establishes a proper basis for the trial court to grant a new trial rather than judgment notwithstanding the verdict. MCR 2.611(A)(1)(e). Here, however, defendant did not request a new trial.

tection and separation-of-powers principles. We agree.[11] MCL 600.2946a(1) provides:

> In an action for product liability, the total amount of damages for noneconomic loss shall not exceed $280,000.00, unless the defect in the product caused either the person's death or permanent loss of a vital bodily function, in which case the total amount of damages for noneconomic loss shall not exceed $500,000.00. On the effective date of the amendatory act that added this section, the state treasurer shall adjust the limitations set forth in this subsection so that the limitations are equal to the limitations provided in section 1483 [MCL 600.1483]. After that date, the state treasurer shall adjust the limitations set forth in this subsection at the end of each calendar year so that they continue to be equal to the limitations provided in section 1483.

In two recent decisions, this Court has held that similar limitations in actions against the lessor of a vehicle, MCL 257.401(3), and actions for medical malpractice, MCL 600.1483, are constitutional. *Phillips,*

---

[11] By its blanket adoption of plaintiff's brief as the basis for its conclusion that MCL 600.2946a is unconstitutional, the trial court held that, in addition to improperly infringing on plaintiff's right to a jury trial, violating equal protection, and violating the principles of separation of powers by conflicting with MCR 2.611 as adopted by the Michigan Supreme Court, the statute also violates due process and Const 1963, art 4 § 29, and infringes impermissibly on the Supreme Court's rulemaking authority by conflicting with MCR 2.508. In its brief on appeal, defendant fails to address the last three grounds for the trial court's ruling that MCL 600.2946a is unconstitutional and has not, therefore, preserved these issues for our review. *Attorney Gen v Public Service Comm*, 243 Mich App 487, 494; 625 NW2d 16 (2000). Nevertheless, we find that justice and a proper determination of this case require us to exercise our authority to go beyond the issues raised and address each ground on which the trial court invalidated the statute. *Paschke v Retool Industries (On Rehearing)*, 198 Mich App 702, 705; 499 NW2d 453 (1993), rev'd on other grounds 445 Mich 502; 519 NW2d 441 (1994); *Frericks v Highland Twp*, 228 Mich App 575, 586; 579 NW2d 441 (1998); *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002).

*supra* at 590-598 (analyzing MCL 257.401[3]); *Zdrojewski v Murphy*, 254 Mich App 50, 75-82; 657 NW2d 721 (2002) (analyzing MCL 600.1483). During oral argument, plaintiff conceded that the analysis employed in *Phillips* and *Zdrojewski* is binding here, but urged this Court to adopt the reasoning of the dissenting opinions in those cases and invoke the conflict provisions in MCR 7.215(I)(2). We decline to do so because we conclude that both *Phillips* and *Zdrojewski* were properly decided, that the analysis employed in those cases applies with equal force to MCL 600.2946a, and that MCL 600.2946a is rationally related to the legitimate governmental interests of encouraging the manufacture and distribution of products in Michigan and protecting those who place products into the stream of commerce from large damage awards in jury trials. See *Phillips, supra* at 598.

The trial court also erred in finding that MCL 600.2946a violates due process. Because we have rejected plaintiff's equal-protection claim, and because the test for determining whether a statute survives a due-process challenge is "essentially the same" as the test for evaluating an equal-protection challenge, *Phillips, supra* at 598, we find that the statute does not violate due process.

Similarly, the trial court erred in agreeing with plaintiff's assertion that MCL 600.2946a violates art 4, § 29 of the Michigan Constitution. Under this constitutional provision, the Legislature is prohibited from passing a "local or special act in any case where a general act can be made applicable . . . ." In support of her claim that the statute violates art 4, § 29, plaintiff cited *Haynes v Lapeer Circuit Judge*, 201 Mich

138, 141-142; 166 NW 938 (1918), where the Court stated that

> legislation which, in carrying out a public purpose for the common good, is limited by reasonable and justifiable differentiation to a distinct type or class of persons is not for that reason unconstitutional because class legislation, if germane to the object of the enactment and made uniform in its operation upon all persons of the class to which it naturally applies; but if it fails to include and affect alike all persons of the same class, and extends immunities or privileges to one portion and denies them to others of like kind, by unreasonable or arbitrary sub-classification, it comes within the constitutional prohibition against class legislation.

We conclude that MCL 600.2946a does not arbitrarily distinguish between plaintiffs bringing products-liability actions and plaintiffs bringing negligence actions. We agree with the *Zdrojewski* Court's finding, in connection with its equal-protection analysis, that the classification created by the damages limitation is not arbitrary. *Zdrojewski, supra* at 80; see also *In re Wirsing*, 456 Mich 467, 472; 573 NW2d 51 (1998) (characterizing the analysis in *Haynes* as an equal-protection analysis).

The trial court also erred in concluding that MCL 600.2946a conflicts with MCR 2.508 and thus infringes on the Supreme Court's rulemaking authority. In *Zdrojewski, supra* at 81-82, this Court stated that "[b]ecause the Legislature may change the substantive law without infringing the Supreme Court's rulemaking authority, MCL 600.1483 and MCL 600.6304 violate the separation of powers doctrine only if the statutes are purely procedural." The *Zdrojewski* Court also found that because the limitation on the recovery of

damages "reflect[s] legislative policy considerations other than court practice and procedure," MCL 600.1483 and MCL 600.6304 are not purely procedural and the Supreme Court's rulemaking authority remains intact. *Zdrojewski, supra* at 82. We agree with and adopt this analysis with respect to MCL 600.2946a.

### IV. CONCLUSION

The trial court properly denied defendant's motions for a directed verdict and judgment notwithstanding the verdict and properly instructed the jury on plaintiff's claim of breach of implied warranty. The trial court erred in finding that MCL 600.2946a is unconstitutional.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.