Daniel **PRYOMSKI**, Plaintiff,

v.

**MICHAL ENTERPRISES, INC., and Fleetwood Motor Homes of Pennsylvania, Inc., Defendants.**

No. 03–70411.

United States District Court, E.D. Michigan, Southern Division.

Nov. 12, 2004.

Steven G. Stancroff, Mark P. Romano, Garden City, MI, for Plaintiff.

Timothy M. Labadie, Detroit, MI, Ward M. Powers, Northville, MI, for Defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

Defendants Fleetwood Motor Homes of Pennsylvania, Inc., (Fleetwood) and Michal Enterprises, Inc., (Michal) move separately for summary judgment on all counts. Although the parties raise a number of complex legal issues, all the claims in this case rest on a simple question of fact regarding the leaky roof of Plaintiff's motor home. Because I find Plaintiff has not satisfied his burden with regard to this issue of fact, in that he has not offered evidence that would allow a reasonable jury to conclude that the current leaks are a result of a continuing defect in the motor home, I GRANT both Defendants' motions for summary judgment on all the claims made against them by Plaintiff.

## FACTUAL BACKGROUND

### A. Purchase of the Motorhome

Plaintiff, Daniel Pryomski, purchased a motor home from Defendant Michal on September 10, 2001. The coach of the motor home was manufactured by Defendant Fleetwood. The motor home came with an express, written warranty from Defendant Fleetwood for the coach. (Fleetwood's Br. in Supp., 2.) Defendant Michal issued no written warranty. Plaintiff does not dispute that he received the owner's manual when he bought the motor home, which contained instructions for maintaining the roof sealant, and also does not dispute that he never re-sealed the roof.[1] (Tr. of D. Promyski Test. at 27, 31.) At the time the motor home was sold, there was no satellite dish installed. As an after-market item, the Plaintiff had a satellite dish installed. (*Id.*, 38.) The installation involves cutting a hole in the "headliner", which makes up the roof of the motor home. (*Id.*)

### B. Post–Purchase Repair History

While driving the motorhome away from the dealership immediately after the purchase, Plaintiff claims—and Defendants do not dispute—that water began entering the coach through the air conditioning mechanism. Plaintiff brought the motorhome to Defendant Michal for repairs of this and other problems a few days later, and revisited the dealership three times in 2001 complaining of roof leaks. (Pl.'s Br. in Opp. to Def.'s Fleetwood's Mot., 1; Def. Fleetwood's Br. in Supp., 4.) The last time Plaintiff brought the motorhome to Defendant Michal for repair was in February of 2002.[2] (Tr. of D. Promyski Test. at 24.) At no time since has Plaintiff made further requests of anyone, including either Defendant, to repair the roof. (Tr. of Pryomski Test. at 25.) Plaintiff has continued to use the motorhome since 2002. (*Id.* at 25–6.)

### C. Evidence of Current Leaks

At the evidentiary hearing on this matter, Plaintiff offered six pictures of stains he said were attributable to water leaks. The stain in Exhibits Two, Three, and Four was located near the satellite dish. The stain in Exhibits Five and Six was by a light, and the stain in Exhibit Seven was at the rear of the home, where Plaintiff has a lounge chair. None of Plaintiff's

---

1. The manual contains the following instructions: "This section outlines the procedures you *must* follow to maintain the weatherproof integrity of your motorhome. Leak damage caused by the failure to inspect and maintain the roof [. . .] may affect your warranty coverage." (Defs.' Ex. B at 09–4.) The manual further instructs owners to inspect every three months, and if the sealant is cracked, peeled, or missing, to reseal all areas with new sealant. (*Id.* at 09–5.)

2. He took the motorhome to Bay City in 2003 for a repair unrelated to the roof. (Tr. of D. Promyski Test. at 24.) Plaintiff never sought service from Defendant Fleetwood.

witnesses could offer an opinion as to the water's entry location. Plaintiff's son-in-law, Timothy Baker, said that he had felt that the headliner was wet, but had only felt the area around the satellite dish, as depicted in Exhibit Three. (Tr. at 97.) Plaintiff had stated in a previous deposition that he had not felt the headliner to see if the stains were wet. (Dep. of Pryomski, 61.) However, he stated in his testimony that he might have misunderstood the question at the deposition, that he had felt the headliner, but "just the darkest stain right above the crank for the dish." (Tr. of Pryomski Test. at 34, 16.)

Defendants offered the expert testimony of Brian Gaughan, who stated that all stains except the one depicted in Exhibit Seven were caused by water, and that the water entered through the hole cut for the satellite dish. (Tr. of Gaughan Test., 79, 95.) He also offered his opinion that the stain in Exhibit Seven was caused by smoke, not water. (*Id.*, 76.)

## ANALYSIS

### A. Motion for Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the evidence and any inferences drawn from the evidence in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations

omitted); *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir.2001).

The burden on the moving party is satisfied where there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1995). In other words, "[i]f the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348 (1986). The trial court has some discretion to determine whether the respondent's claim is plausible. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir.1996). *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989).

### B. Evidentiary Support for All Plaintiff's Claims

Plaintiff has eight total claims against the two Defendants, but all of them depend on offering sufficient evidence that the roof of the motorhome is leaking, and that a defect in the product caused those leaks. *See, e.g., Kenkel v. Stanley Works*, 256 Mich.App. 548, 665 N.W.2d 490 (2003). I find that Plaintiff has failed to offer sufficient evidence that: (1) the stain depicted in Exhibit Seven is due to a water leak; and (2) the remaining stains, which all parties agree are caused by water leaks, are attributable to the motorhome's condition at purchase and not to the after-

market addition of the satellite dish or to Plaintiff's failure to maintain the sealants.

Defendant's expert testimony that the stain pictured in Exhibit Seven is due to smoke instead of water was not opposed by anything more than Plaintiff's own visual assessment of the stain and his belief it was caused by water. Plaintiff cites two cases for the proposition that this is sufficient evidence to withstand a motion for summary judgment, but these cases do not support his position. In *Severn v. Sperry Corp.*, the Michigan Court of Appeals held that a defective condition can be proved by circumstantial evidence alone, finding that the plaintiff's testimony and the results of an independent visual inspection and subsequent chemical analysis together contained enough evidence of product defect to allow the case to go forward. 212 Mich. App. 406, 538 N.W.2d 50, 54 (1995). In *Kenkel v. Stanley Works*, the same court held that the "plaintiff's testimony and the testimony of parties' experts was sufficient" to allow the case to go to a jury. 256 Mich.App. 548, 665 N.W.2d 490, 498 (2003).

Here, unlike either of these precedents, Plaintiff offers no evidence to support his own testimony that he believes all the stains are due to water. Neither he nor any other of his witnesses touched the stain depicted in Exhibit Seven, and therefore, the only evidence that it was caused by water is Plaintiff's sight-based assessment. Therefore, Plaintiff offers only the merest scintilla of evidence that Exhibit Seven is a water stain, and I do not believe a jury could reasonably find that the stain at the rear of the motorhome is in fact a water stain.

I now turn to the leaks near the satellite dish and the light. Here, Plaintiff has offered no evidence to contradict the expert testimony that the water that created both these stains entered through the hole

cut for the after-market item of the satellite dish. Therefore, I do not believe a reasonable jury could find against either Defendant, given that there would be no evidence for finding that the water came in through any other place than the satellite dish hole. Moreover, this is not a case, as was true in *Kenkel*, where the allegedly defective part was "not generally required to be [...] maintained[.]" 665 N.W.2d at 498. Here, the owner's manual specifically mandates that the sealants be maintained, and Plaintiff admits he did not do so. Therefore, even if a jury were able to find that a defect in the roof existed, under Michigan law, it would not be reasonable to infer the defect is attributable to the manufacturer. *Id.*

Therefore, I find Plaintiff has not offered sufficient evidence to pursue its claims against either one of Defendants in this matter, and I GRANT the motion for summary judgment in favor of both Defendants on all of Plaintiff's claims against them.

## C. Defendant Michal's Motion for Sanctions

Defendant Michal's Motion for Summary Judgment requests sanctions under both Fed.R.Civ.P. 11 and the Michigan Frivolous Claims Statute (M.C.L.600.2591). Sanctions are not warranted in this case. Plaintiff clearly made good-faith arguments in law for why Michal's should be liable to Plaintiff, and the evidentiary evidence put forward demonstrates enough investigation of the case to make sanctions unwarranted. Therefore, I DENY the motion for sanctions.

## CONCLUSION

Defendant Fleetwood's Motion for Summary Judgment is GRANTED as to all counts. With the exception for the request for sanctions, which I DENY, Defen-

dant Michal's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**