*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LARRY LEE,

       Plaintiff-Appellant,

v

ANN ARBOR BEER DEPOT, INC.,

       Defendant-Appellee.

UNPUBLISHED
September 28, 2023

No. 363298
Washtenaw Circuit Court
LC No. 19-001084-NO

Before: SHAPIRO, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

In this negligence case, plaintiff appeals as of right the trial court's judgment of no cause for action following a jury trial resulting in the same verdict. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In early January 2019, plaintiff found a bottle of Congaplex Multivitamins while shopping in defendant's store (the Beer Depot). The parties dispute whether plaintiff purchased this bottle from the Beer Depot. Defendant introduced proofs that the Beer Depot did not, and never has, sold vitamins, and argues, if defendant actually found the bottle in the Beer Depot, it was not placed there by the store but was left behind by a previous customer. These differing opinions will be addressed later when discussing the testimony.

Regardless of how plaintiff came to have the pill bottle, in late January 2019, plaintiff took between 10 to 12 pills from the bottle, because the Congaplex pills had significantly lower dosages of the vitamins plaintiff usually took. Plaintiff could not remember whether the Congaplex bottle had any secure safety seals when he first opened it. After taking the pills, plaintiff reported feeling lightheaded and dizzy before losing consciousness. Plaintiff went to an urgent care, where the doctor confirmed there were opioids, specifically Norco, in plaintiff's system, and recommended he go to the hospital, which he did. At the hospital, additional tests also showed opioids in plaintiff's system. However, while there were opioids in plaintiff's system, his medical examinations at the urgent care and the hospital were otherwise unremarkable.

-1-

Either the same day, or the next day, plaintiff went to the Beer Depot to confront Frank LaDanyi, the employee who plaintiff alleges sold him the Congaplex bottle. Plaintiff video recorded the exchange, during which he asked Frank "who the vendor was for the pills[,]" to which Frank replied "there was no particular vendor and that someone had left the pills there." The parties acknowledged plaintiff, in the video, never claimed to have "purchased" or "bought" the pills, only that he "got" them from the Beer Depot. Nor did Frank ever say he "sold" the pills. After the overdose, plaintiff sought out services of various medical individuals for treatment. Plaintiff, who was already on anxiety medication because of numerous past traumas, also increased the dosage of his anxiety medication because of increased stress from the overdose.

Plaintiff filed suit, asserting claims for negligence, or gross negligence, breach of implied warranty, failure to warn, and respondeat superior against defendant based on the allegation that the store marketed and sold a bottle of vitamins containing narcotics to plaintiff. At his deposition, plaintiff contended he purchased the bottle from Frank for between four and six dollars, but asserted he paid cash and did not have a receipt.

During the three-day trial, plaintiff again testified he was sold the pills while Frank denied selling plaintiff the pills. The owner of the Beer Depot also testified the Beer Depot never sold vitamins, and that, while the Beer Depot had a security camera, plaintiff never asked for the footage to prove he purchased the pills, and the footage was already written over by the time of the trial. After this testimony, the jury was excused and the attorneys and the trial court discussed the verdict form. Defendant's attorney contended the first question should be "did the Beer Depot sell the multivitamins to Plaintiff? If, yes, continue. If, no, then why go through the exercise?" Plaintiff's attorney disagreed at first, but the trial court agreed that: "If he didn't buy it there, . . . there can't be negligence. There was no other theory offered." Plaintiff's attorney then agreed and acknowledged the first question would be whether defendant sold plaintiff the pills. Before the jury was seated again, the trial court asked: "does it sound right to say to the jury do you find by a preponderance of the evidence that the Beer Depot sold vitamins to the Plaintiff?" To which defendant's attorney replied: "Yes[,]" and plaintiff's attorney replied: "Yeah? Okay. Yes."

After closing arguments, the trial court began instructing the jury. After going through the instructions, the trial court addressed the verdict form, instructing the jury: "Question one simply says did the Defendant sell the multivitamin bottle to the Plaintiff? If the answer is yes, the instructions say to go to question two; if the answer is no, don't go any further. That's the end of it." The trial court finished explaining the verdict form to the jury before excusing the jury for deliberation. The jury then returned, and found defendant did not sell the bottle to plaintiff, and the trial court subsequently entered a judgment of no cause for action in favor of defendant. This appeal followed.

## II. ANALYSIS

Plaintiff argues the trial court erred by allowing the first question on the verdict form to be whether defendant sold him the bottle. We disagree.[1]

Regardless of whether plaintiff's counsel waived this issue by agreeing to the verdict form, plaintiff's argument still fails. To start, the trial court did not procedurally err by allowing the disputed question in the verdict form:

> (A) Use of Special Verdicts; Form. The court may require the jury to return a special verdict in the form of a written finding on each issue of fact, rather than a general verdict. If a special verdict is required, the court shall, in advance of argument and in the absence of the jury, advise the attorneys of this fact and, on the record or in writing, settle the form of the verdict. The court may submit to the jury:
>
> (1) written questions that may be answered categorically and briefly;
>
> (2) written forms of the several special findings that might properly be made under the pleadings and evidence; or
>
> (3) the issues by another method, and require the written findings it deems most appropriate.
>
> The court shall give to the jury the necessary explanation and instruction concerning the matter submitted to enable the jury to make its findings on each issue.
>
> (B) Judgment. After a special verdict is returned, the court shall enter judgment in accordance with the jury's findings. [MCR 2.515(A) and (B).]

MCR 2.515 recognizes that a trial court may submit the controlling factual issues in a case to the jury, which, in this case, was whether defendant sold plaintiff the bottle. See 3 Mich Ct Rules Prac, Text § 2515.6 (8th ed) ("When a case is submitted to the jury for a special verdict, the parties are entitled to have all of the controlling factual issues submitted to the jury."). This court rule is consistent with the principle that jury instructions "should include all the elements of the plaintiff's claims and should not omit material issues, defenses, or *theories* if the evidence supports them."

---

[1] This Court reviews preserved claims of instructional error de novo. *Kenkel v Stanley Works*, 256 Mich App 548, 555; 665 NW2d 490 (2003). However, "MCR 2.613(A) provides that a verdict should not be set aside unless failure to do so would be inconsistent with substantial justice. Reversal is not warranted when an instructional error does not affect the outcome of the trial." *Jimkoski v Shupe*, 282 Mich App 1, 9; 763 NW2d 1 (2008). "On appeal, jury instructions are reviewed in their entirety, rather than extracted piecemeal to establish error in isolated portions." *Mull v Equitable Life Assurance Society of the United States*, 196 Mich App 411, 423; 493 NW2d 477 (1992). "There is no error requiring reversal, if on balance, the theories of the parties and the applicable law were fairly and adequately presented to the jury." *Id.*

*Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000) (emphasis added). Furthermore, on appeal, this Court must review jury instructions in the context of the facts and plaintiff's theories. See *Jernigan v Gen Motors Corp*, 180 Mich App 575, 582; 447 NW2d 822 (1989) ("A reading of the jury instructions in their entirety, in the context of the facts of plaintiff's case and plaintiff's theories, convinces us that any error was harmless.").

Plaintiff's theory of the case rested largely on his assertion defendant or Frank sold him the pills. This statement was specifically noted under the counts for negligence and breach of implied warranty, and, even for the counts that did not specifically allege he bought the pills, the incorporation of the preceding paragraphs under those counts indicates plaintiff's claims all relied on this fact. Even when confronted with the lacking evidence to support his claim he bought the pills, plaintiff doubled down, continuously asserting this was what happened, and continued asserting he was sold the bottle even during closing argument. Specifically, during closing argument, plaintiff's counsel addressed defendant's argument that no one in the video ever used the term "bought," arguing:

> The important thing of that video, the important thing of this case is that he bought those pills there. And they focus on the fact that he doesn't have a receipt and he, you know, doesn't have a record of this purchase. Well it was a small purchase done with cash and as [plaintiff] testified to he had no idea they were going to deny that he bought them there.

Additionally, plaintiff's counsel asked the jury whether plaintiff did "something wrong by trusting when he purchased a bottle of multivitamins at a store he's been to frequently in the past[,]" and later asked: "[W]ould any reasonable business, would any reasonable person really just grab [a] random product that's left behind and just sell it? . . . That's the question." All of plaintiff's claims rested on his contention defendant sold him the pills. At no point did plaintiff assert he did not buy the pills, nor did he argue in the alternative that, even if defendant had not sold him the pills, defendant was still somehow negligent. Neither the jury nor the trial court was required to consider an alternative theory which plaintiff never raised.

On appeal, plaintiff argues he could have successfully proven the elements of his claims without having to prove defendant sold him the pills, but his own testimony and his attorney's closing arguments say otherwise. While it is theoretically possible defendant could have committed negligence without selling plaintiff the bottle, this was not plaintiff's theory of the case. Plaintiff, from the beginning in his complaint to the end in his closing argument, continuously alleged defendant was negligent by *selling* him the pills. Therefore, a finding that defendant did not sell the pills to plaintiff would invalidate his claims. All of plaintiff's claims could be resolved by determining whether defendant sold plaintiff the pills, because that was what plaintiff contended happened. There was thus no error in having the first question on the verdict form concern whether this actually occurred.

-4-

## III. CONCLUSION

Because there was no error in having the first question on the verdict form concern whether defendant sold plaintiff the pills, and this issue was dispositive of plaintiff's claims, we affirm the trial court's judgment of no cause for action.

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Thomas C. Cameron