# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERRY LEE PARISH,

        Defendant-Appellant.

UNPUBLISHED
August 14, 2018

No. 335829
Genesee Circuit Court
LC No. 16-038995-FH

Before: BOONSTRA, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of second-degree home invasion, MCL 750.110a(3). Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 36 to 240 months' imprisonment for second-degree home invasion. We affirm.

On January, 21 2016, at approximately 4:00 pm, the ADT alarm system was triggered at the victim's home, a residential horse farm which is owned and operated by Ms. Sandra Sander. A camera trained on the driveway showed defendant exiting his vehicle, a black Mercury Mountaineer, opening the back hatch, and disappearing off screen in the direction of the garage and the entrance to the house contained therein. However, there is no footage entered into the record showing defendant inside of the premises, exiting the premises, or any physical evidence of defendant having been in the home. Ms. Sander reported her jewelry box missing the following day, January 22, 2016. She had installed the ADT alarm system after noticing several pieces of jewelry had gone missing over the prior two months. After Ms. Sander identified defendant to the police, the police issued a search warrant for defendant's home and vehicle. The only property identified by Ms. Sander as possibly belonging to her discovered at defendant's residence was a 5 Guilder coin from the Netherlands. Ms. Sander could not identify the particular coin, but noted that she had placed some foreign coinage (Dutch, Guatemalan, and possibly Mexican) in the jewelry box that had been stolen. None of the other jewelry recovered matched any of the jewelry Ms. Sander had reported missing. The prosecution therefore bases its case on defendant having been at the scene when the alarm tripped, his familiarity with the home having previously performed odd jobs for Ms. Sander, and his possession of a rather unique coin. Prosecution also relied on text messages showing possible financial difficulty as a possible motive, however, this Court discredits those messages and any relative weight they might have had on the proceedings.

-1-

Defendant first argues that the trial court erred in denying defendant's motion for a directed verdict of acquittal because there was insufficient evidence to support his second-degree home invasion conviction in light of the prosecution's failure to prove that defendant committed or intended to commit a larceny in the home of Sandra Sander. We disagree.

This Court reviews a trial court's decision on a motion for a directed verdict of acquittal de novo. *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001). Viewing the evidence in a light most favorable to the prosecution, this Court asks whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Couzens*, 480 Mich 240, 244; 747 NW2d 849 (2008). This Court does not determine the weight of the evidence, or the credibility of witnesses, "no matter how inconsistent or vague that testimony might be." *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001).

Defendant was convicted of second-degree home invasion pursuant to MCL 750.110a(3), which provides:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the second degree. [*People v Nutt*, 469 Mich 565, 593; 677 NW2d 1 (2004), quoting MCL 750.110a(3).]

A "dwelling" within the meaning of MCL 750.110a is defined as "a structure or shelter that is used permanently or temporarily as a place of abode, including an appurtenant structure attached to that structure or shelter." *People v Crews*, 299 Mich App 381, 393; 829 NW2d 898 (2013).

The prosecution charged defendant under a legal theory that on January 21, 2016, defendant "did break and enter, or did enter without permission" Sander's home "with the intent to commit a larceny therein." Defendant does not argue that there was insufficient evidence that he was at the Sander's home, or that he triggered the alarm of the door between the garage and the kitchen, thereby satisfying the breaking element. Rather, defendant argues that the prosecution failed to proffer sufficient evidence that defendant committed or intended to commit a larceny inside Sander's house.

A person commits a larceny by wrongfully taking from one who has rightful possession. *People v March*, 499 Mich 389, 404; 886 NW2d 396 (2016). Larceny is a specific intent crime, and requires the prosecution to prove that the defendant took the property of another with the intent to permanently deprive the owner of that property. *People v Pratt*, 254 Mich App 425, 427-428; 656 NW2d 866 (2002). Thus, the prosecution was required to prove that defendant broke and entered Sander's home or entered without permission, and with the intent to permanently deprive her of her property.

Circumstantial evidence and the reasonable inferences drawn by the jury from that evidence can be satisfactory proof of the elements of the charged offense, *People v Henderson*,

306 Mich App 1, 9; 854 NW2d 234 (2014), and "are reviewed in the same manner as those arising from direct evidence," *People v Murphy (On Remand)*, 282 Mich App 571, 582; 766 NW2d 303 (2009). While intent to commit larceny cannot be presumed "solely from proof of the breaking and entering," *People v Uhl*, 169 Mich App 217, 220; 425 NW2d 519 (1988), it may be inferred from circumstantial evidence. *Henderson*, 306 Mich App at 11. Because it is difficult to prove a defendant's intent, minimal circumstantial evidence may be sufficient to establish the defendant's state of mind. *Id*. at 11. Intent may reasonably be inferred from all the facts in evidence, including "the nature, time and place of defendant's acts before and during the breaking and entering." *Uhl*, 169 Mich App at 220. Ultimately, it is the role of the factfinder to answer questions of a defendant's intent. *People v Harrison*, 283 Mich App 374, 382; 768 NW2d 98 (2009).

Although the prosecution's case against defendant was almost entirely circumstantial, there was sufficient circumstantial evidence and reasonable inferences arising from the proffered evidence to support a conclusion that defendant committed or intended to commit a larceny inside Sander's house. It is clear from Sander's testimony that the security camera footage showed defendant pull into Sander's driveway, exit his vehicle, and walk toward the door connecting the garage and the kitchen. Defendant conceded that he opened the door connecting the garage and the kitchen without Sander's permission. Additionally, defendant was intimately familiar with Sander's home, having previously performed odd jobs in different parts of the house, including the bedroom. Defendant knew that Sander kept her doors unlocked, and that he could enter her home through the door in the garage. There was no reason for defendant to be at Sander's house on the day in question given that they last spoke in August 2015, and defendant was no longer working for Sander. Less than 18 hours after defendant opened Sander's door, Sander noticed that her jewelry box was missing. Additionally, defendant was in possession of a Dutch coin, just like the one that Sander kept in her stolen jewelry box. Defendant was also late to pick up his stepdaughter because he was at Sander's house.

Defendant argues that the prosecution's entire case balances on one piece of physical evidence—the Dutch coin found in defendant's home. Specifically, defendant argues that the prosecution failed to offer any evidence that his possession of the coin was more than a mere coincidence. However, as discussed above, there was sufficient circumstantial evidence without the Dutch coin to support the jury's conclusion that defendant committed a larceny inside Sander's house. Ultimately, it was for the jury to determine whether the evidence pointed to defendant's guilt beyond a reasonable doubt. *Harrison*, 283 Mich App at 378.

The evidence, when viewed in the light most favorable to the prosecution, supports the conclusion that defendant entered Sander's home with the intent to commit a larceny therein. Therefore, the trial court properly denied defendant's motion for a directed verdict of acquittal because the prosecution presented sufficient evidence for the jury to conclude that the elements of second-degree home invasion were proven beyond a reasonable doubt.

Defendant next argues that he was denied a fair and impartial trial because the prosecution shifted the burden of proof to defendant twice, and misrepresented a text message conversation between defendant and his wife during closing arguments. We disagree, while noting that trial court abused his discretion in allowing the text messages to be admitted and that the prosecutor's argument that poverty was a motive for a theft crime was improper.

Generally, this Court reviews issues of prosecutorial misconduct de novo to determine whether defendant was denied a fair and impartial trial. *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). Claims of prosecutorial misconduct are evaluated on a case-by-case basis, and this Court must consider the prosecution's comments in context. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). However, this Court reviews unpreserved claims of prosecutorial misconduct for plain error that affected defendant's substantial rights. *Id*. Under the plain error standard, defendant must satisfy three requirements: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 765; 597 NW2d 130 (1999). Even if all three requirements are met, reversal is only warranted when the plain error resulted in an innocent defendant's conviction, or it "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Bennett*, 290 Mich App at 475-476. This Court cannot find error that requires reversal if a curative instruction could have alleviated any prejudicial effect. *Id*. at 476.

"The propriety of a prosecutor's remarks depends on all the facts of the case." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007), quoting *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). A prosecutor's remarks must be read as a whole, and are evaluated in light of the defendant's arguments and the relationship they bear to the evidence admitted at trial. *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008).

A defendant has a constitutional right not to testify at trial. US Const Am V; Const 1963, art 1, § 17. To protect this right, the prosecution may not comment on a defendant's failure to testify, or to present evidence. *People v Fyda*, 288 Mich App 446, 464; 793 NW2d 712 (2010). During closing argument, the prosecution is prohibited from implying that "the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *Id*. at 463-464. However, if the defendant advances an alternate theory, the prosecution does not improperly shift the burden of proof to the defendant by commenting on the nonproduction of corroborating witnesses. *Id*., citing *People v Shannon*, 88 Mich App 138, 145; 276 NW2d 546 (1979).

First, defendant argues that, during closing argument, the prosecution shifted the burden of proof to defendant by suggesting to the jury that defendant's failure to explain why he was at Sander's house on January 21, 2016, was grounds for finding him guilty of second-degree home invasion. During closing remarks, the prosecutor commented:

Why is he there? Why? The victim, Ms. Sanders, testifying I didn't call him out there. He didn't have any more work to do. I didn't have any more job[s] for him to do. Why is he there?

*  *  *

We're talking about what happened on January 21, 2016. Why was the [d]efendant there? Why was he there? If he came to pick up property, things that he had worked with . . . When the police come and take pictures why is that still there? Why is the paint brush still there if he was there to pick up paint brushes?

*  *  *

-4-

But it all goes back to the question why was he there when he knew [Sander] wouldn't be there. He wasn't over there to get a check [because] he knew she wouldn't be there. She's at work. Why did he show up there?

* * *

Why is he there? That's the question. And if he's there to pick up his belongings, why didn't he pick them up?

At the outset, the prosecution did not comment on defendant's decision not to testify or offer any evidence at trial. Thus, the prosecution did not infringe on defendant's constitutional right to remain silent. The prosecution did not impermissibly refer to defendant's silence, but rather, brought attention to defendant's failure to call or ask certain questions of witnesses to corroborate defendant's theory that defendant went to Sander's home to get his tools.

Further, when read in context, the prosecution merely advanced its position that the facts introduced into evidence demonstrated that defendant intended to commit a larceny inside Sander's home. The prosecution is free to argue the evidence and all reasonable inferences drawn therefrom as it concerns their theory of the case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995).

The prosecutor's remarks were a fair response to issues that defendant made legally relevant during defendant's cross-examination of Sander and during defendant's closing argument. The prosecution is entitled to fairly respond to issues raised by defendant. *People v Hicks*, 259 Mich App 518, 534; 675 NW2d 599 (2003). During cross-examination of Sander, defense counsel pointed out that defendant left his equipment in Sander's garage. During closing arguments, defense counsel specifically discussed defendant's reasons for being at Sander's house on January 21, 2016. Therefore, there was no error because, when reviewing the prosecutor's comments in context, it is clear that they were made in response to defense counsel's line of questioning during Sander's cross-examination.

Second, defendant argues that the prosecution impermissibly shifted the burden of proof to defendant during closing argument by suggesting that defendant had to explain why the Dutch coin was found in his house. The prosecutor stated:

Now you go back and use your common sense and experience. Of course, nickels, dimes, even Canadian money, anybody could have that in their pocket. Canada is like going to Ohio from Michigan. But who has some money from the Netherlands? Just happen to have that at their house and it just happens to be after they were picked up on camera going into somebody's house who had been to the Netherlands? And when the search was done [ ] Officer Lasota testified they searched the [d]efendant's house like the twenty-fifth. This happened on the twenty-first. That's plenty of time for all the other stuff to be gone. But there's still this coin there. So, think about that. Go back, use your common sense, your experience. Think about that.

* * *

What witness said somebody picked up a coin out in the grass somewhere? I don't remember a witness saying that. What witness said if someone runs through the house it's a game for the dogs? I don't remember a witness saying that. Who even said the [d]efendant was there to pick up the paint handle? I don't remember a witness saying that. It was said but a witness didn't say it.

\*   \*   \*

Of course [Sander] didn't know if that coin specifically was the coin she had. I would be more leery of the story if she did [but] she said I have been to the Netherlands and I did keep them in my jewelry box. That's all she could say. But we haven't had any evidence from the stand that says he picked that up in the garden.

\*   \*   \*

I'm presenting you evidence. Pictures are evidence. What witnesses said was evidence. What Ms. Sander says is evidence. What . . . [Sander's emergency contact] . . . said that's evidence. What the housekeeper said, that's evidence. What Officer Engel here says is evidence. What . . . Officer Lasota said is evidence. Any picture you see that the [j]udge admitted is evidence. Any video you see is evidence. There's no evidence that anybody picked up a coin in a garden. That's not evidence.

The prosecutor's statements did not improperly shift the burden of proof onto defendant. When read in context, the prosecution's statements properly commented on facts in evidence, and instructed the jury to draw reasonable inferences from that evidence. The prosecution may comment on the credibility of its own witnesses during closing arguments. *People v Jackson*, 313 Mich App 409, 426; 884 NW2d 297 (2015). It is clear that the prosecution merely commented on the lack of evidence to support defendant's theory that he was at Sander's house to pick up his painting equipment.

Defendant's third issue on appeal is the inclusion of testimony about a text message conversation between his wife and himself regarding their financial situation. This Court finds that defendant properly preserved any issues regarding testimony about the text messages. Defense counsel timely objected to the prosecutor's original request to admit testimony regarding the text messages and the trial court overruled the objection. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). While the admission of the testimony regarding the text message conversation was not specifically argued on appeal to this Court, the mention of the text message conversation in closing argument was argued on appeal. The argument on appeal is that the prosecutor shifted the burden to defendant in three different sections. This Court has stated clearly that, "[a] prosecutor's remarks must be examined in context and evaluated in light of defense arguments and the relationship they bear *to the evidence admitted at trial* to determine whether a defendant was granted a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005) (emphasis added). Furthermore, the propriety of a prosecutor's remarks requires examination of the *entire* record. *See Dobek*, 274 Mich App at 64 (emphasis added). The prosecution stated that they included testimony about said messages for the

purposes of providing motive. However, the prosecution is not required to show motive in a larceny case. "Motive in the typical [theft] case is a collateral issue of minimum importance." *People v Henderson*, 408 Mich. 56, 66 (1980). The trial court abused its discretion by refusing to sustain defense counsel's objection to the relevance of the introduction of poverty as motive when the testimony regarding the text messages was entered into evidence.

The introduction of the text messages through the testimony of Officer Lasota and their stated purpose to the prosecution proceeded as follows. (Prosecutor (Mr. Maxwell) asking questions, Officer Lasota responding unless otherwise noted):

*Q*. Okay. Any conversations about money?

*A*. There were other text messages were - - it appeared that, uh, they were having some type of financial problems when he would text his wife.

*Q*. And what do you mean by that?

*A*. There was talk about, uh –

Mr. Norwood (Defense): Your Honor, I guess I'd object for relevance

The Court: The Objection is relevance, Mr. Maxwell.

Mr. Maxwell: Well if they're talking about money and financial problems I believe that would go to a motive in this case.

The Court: Okay. Your response to that, Mr. Norwood?

Mr. Norwood: Your Honor, that's pretty vague and could go to a million different things. Just because someone after Christmas may have some financial problems doesn't necessarily mean they broke into the house and to try to tie that it's stretching extremely far and I think it's prejudicial.

The Court: Okay. Any other response to that, Mr. Maxwell?

Mr. Maxwell: Well, I just believe it goes to motive and if there was some financial problems, that the reason you might want to steal something.

The Court: Well the definition of relevancy is a pretty broad definintion [sic]. It says relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. That's a very broad definition so I would overrule on the basis of relevance because it might be relevant to show, as you indicated Mr. Maxwell, motive. So I would overrule the objection.

The trial court allowed the testimony to proceed. Officer Lasota testified:

-7-

The conversation basically went to it didn't appear they had enough food to feed the dogs. There was talk about an associate of theirs having some shut off notice and that he could feel the pain and that they had to come up with a solution to this, their problem. And it also mentioned that if a debit card arrives in the mail they'll be able to buy dog food. Then later on it says he took the money out of the bank and the problem's solved. So it just appeared to me that there was this conversation about financial problems and not being able to *even buy dog food*. (Emphasis added).

The prosecutor established that the text conversation took place the same day as the theft, and then ended his line of questioning.

"Evidence of poverty . . . is not ordinarily admissible to show motive. The probative value of such evidence is diminished because it applies to too large a segment of the total population. Its prejudicial impact, though, is high." *Henderson*, 408 Mich at 66. In discussing when evidence of poverty might be admissible, the Court stated: "[the defendant] was not charged with an ordinary theft offense such as larceny, robbery, or breaking and entering. He was charged with embezzlement." *Id*. The Court makes it clear that except for cases where a specific financial event might make an unlikely individual commit a financial crime, such as a high level manager embezzling money to cover an extensive gambling debt, establishing the defendant's financial situation as motive is improper. The Court writes:

> "There is a difference between evidence of poverty and unemployment evidence that a person is chronically short of funds and evidence of the sort involved in this appeal, showing that a person is experiencing a shortage of funds that appears to be novel or contrary to *what one would expect is typically felt by such a person*." *Id*. (emphasis added).

Therefore, the repeated statements by the prosecutor and Officer Lasota that defendant had financial or money problems and that he was not "able to *even buy dog food*," are designed not to highlight a contrary or novel financial predicament, but a chronic financial situation, at least on the date of the offense. The prosecutor has already established that defendant lives in a trailer home and works odd jobs. Now he brings in the inability to afford dog food, continuing to paint a picture of defendant as a poor, desperate individual. This is exactly the kind of irresponsible speculation that the Court in *Henderson* sought to eliminate from criminal prosecutions for plain theft offenses. "There is a risk that it [admission of evidence of poverty] will cause jurors to view a defendant as a 'bad man' a poor provider, a worthless individual." *Henderson*, 408 Mich. at 66.

During closing argument, the prosecutor remarked:

And go back to when Officer Lasota was testifying. He testified about a text message where the [d]efendant was talking to his wife. He said we need some money to get dog food. It happened to be the same day, that text, as the day that her house was broken into, the same day when the [d]efendant was at her house and we're back at that question. Why was he there? That's for you to decide.

*Was he there to get something to sell to get money because they didn't have any money?* (emphasis added)

\* \* \*

Matter of fact, use your common sense and experience. Ms. Sanders got horses running around. She said she's got cats in the barn. She's got three dogs in the house. He probably could've asked her for some dog food or some money to feed the dogs. Probably wouldn't have been any problem. Why is he there when she's not going to be there, when there's no cars in the driveway? Why is he there? If you come back with the conclusion he's there to steal something[,] which a jewelry box came up missing[,] and he opened the door to get into the house[,] and when he went in he had the intent to steal[,] and you answer all those questions yes, then you have to come back with a verdict of guilty. Thank you for your time and attention.

Again the prosecutor improperly alleges poverty. However, defendant responds that the prosecutor, in his closing statements, simply mischaracterizes the messages, stating that defendant had funds, just lacked easy access to them, and was able to remedy the situation by a trip to the bank. Either way, the inclusion of testimony regarding the texts in the present case, either at trial or during closing arguments, is improper. Defendant claims he had the money and was able to withdraw it from the bank. The prosecution claims that statement is false, yet offers no evidence to combat it. Either defendant was chronically impoverished to the point of not being able to afford even dog food, as Officer Lasota testified was his reading of the messages, therefore rendering the testimony and text evidence improper as a blanket condition of poverty is not appropriate to introduce in a larceny case. Or, defendant was simply temporarily short of *access* to his funds, was able to remedy the situation by traveling to the bank in person and obtaining the funds, and therefore had no motive to rob the victim; the implication that defendant lied in his message to his wife might have improperly shifted the burden to the defendant to prove that he had lawfully withdrawn the money. The prosecution offers no evidence that defendant did not, in fact, withdraw money from the bank that day. Had the prosecutor simply subpoenaed defendant's bank records this issue would not be before us. However, by not doing so, the prosecution either presented evidence of poverty or forced defendant to prove that he withdrew the money. However, as the prosecutor himself stated that the admission of the testimony regarding the text messages was designed to show defendant's poverty as motive, not to question the defendant's honesty about the contents of the text messages, this Court does not find that the prosecutor inappropriately shifted the burden to the defendant to prove that he had not actually withdrawn the funds.

I respect that my partially-dissenting colleague would prefer not to address this issue, given that defendant did not expressly and explicitly raise it. As a general matter, this Court deems waived any "arguments not raised and preserved for review." *People v Stanaway*, 446 Mich 643, 694; 521 NW2d 557 (1994). However, I presume my colleague would agree that this Court *is* obligated to thoroughly address any issues that a defendant *does* properly raise and present. *People v Cain*, 238 Mich App 95, 127; 605 NW2d 28 (1999). My colleagues do not dispute that defendant properly raised the issue of the propriety of the content of the text messages as argued in the prosecutors closing. As discussed extensively *supra*, in reviewing that

issue, this Court is *required* to consider both the context and the entire record regarding the closing arguments and the evidence contained therein. *Brown*, 279 Mich App at 135-136; *Dobek*, 274 Mich App at 64.[1] My colleague makes a fair point that this Court should not become an advocate for a party.[2] However, that does not mean that this Court should willfully blind itself to any serious wrongs discovered in the process of engaging in our *mandatory* review of the entire record. It has long been held that "[t]he inherent power of this Court to prevent fundamental injustice is not limited by what appellant is entitled to as a matter of right." *People v Wynn*, 386 Mich 627, 642; 194 NW2d 354 (1972) (quotation omitted). As the United States Supreme Court has observed, it is also in the practice of reviewing and correcting "plain errors not raised by defendants" who had, as in the case at bar, already otherwise "petitioned the court for review on other grounds." *Greenlaw v United States*, 554 US 237, 247; 128 S Ct 2559; 171 L Ed 2d 399 (2008).

My colleague may, perhaps, deem the injustice discovered in the case at bar to be of insufficient magnitude to warrant a departure from tradition. See *Wynn*, 386 Mich at 643. As the United States Supreme Court put it:

> In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings. [*United States v Atkinson*, 297 US 157, 160; 56 S Ct 391; 80 L Ed 555 (1936).]

Although I would disagree, a finding that the instant case is not "exceptional" would technically be a sound basis for declining to address the matter. However, the fact that a party has failed to properly preserve or present an issue is *not* an inherent basis for overlooking manifest injustice we have discovered while otherwise performing our *duty* to review the record. See *id*.; *Mack v City of Detroit*, 467 Mich 186, 205-208; 649 NW2d 47 (2002); *Cain*, 238 Mich App at 127[3]; see

---

[1] See pg. 10 for further legal analysis regarding the review of all of the evidence and entire record regarding prosecutorial closing arguments.

[2] Although I am unpersuaded that extensive reliance on dissenting or concurring opinions carries significant persuasive value. See *Rohde v Ann Arbor Public Schools*, 265 Mich App 702, 707; 698 NW2d 402 (2005).

[3] Although my colleague accurately points out that the parties in *Cain* raised the issue under consideration at oral argument, this Court has previously explained precisely the same point: "The court is *obligated* only to review issues that are properly raised and preserved; the court is *empowered*, however, to go beyond the issues raised and address any issue that, in the court's opinion, justice requires be considered and resolved." *Paschke v Retool Industries (On Reh)*, 198 Mich App 702, 705, 499 NW2d 453 (1993) (emphasis in original), rev'd on other grounds 445 Mich 502, 519 NW2d 441 (1994). Our Supreme Court's reversal in *Paschke* was based on a finding that this Court's substantive conclusion on the issue was incorrect, not that its sua sponte review of that issue was itself improper. 445 Mich at 505, 508, 510, 513, 519. This Court noted

also, *Frericks v Highland Twp*, 228 Mich App 575, 586; 579 NW2d 441 (1998); *Kenkel v Stanley Works*, 256 Mich App 548, 562 n 11; 665 NW2d 490 (2003); *LME v ARS*, 261 Mich App 273, 287; 680 NW2d 902 (2004). Something so fundamentally basic and inherent to justice being served, namely using poverty against a criminal defendant in a theft crime, can and must be addressed by this Court *sua sponte*.

One of my concurring colleagues asserts that this issue was not raised and therefore should not be addressed by this Court. The issue of the propriety of the content of the text messages was raised by the defense in their brief, and in reviewing the pertinent parts of the record related to the testimony regarding the text messages, as this Court is required to do, *McElhaney*, 215 Mich App at 283, there is no question that the issue was raised, preserved, and is properly before this Court. Additionally, something so fundamentally basic and inherent to justice being served, namely using poverty against a criminal defendant, may be addressed by this Court sua sponte. "The court is *obligated* only to review issues that are properly raised and preserved; the court is *empowered*, however, to go beyond the issues raised and address any issue that, in the court's opinion, justice requires be considered and resolved." *People v Cain*, 238 Mich App 95, 127; 605 NW2d 28 (1999) (quotation omitted) (emphasis on original).

However, even with all that occurred regarding poverty, defendant fails to demonstrate plain error because the prosecution did not infringe on defendant's constitutional right to a fair and impartial trial. Although the implication of poverty as a motive could have had bearing on the jury's opinion of defendant, there is enough probative evidence that it is highly likely that defendant would have been convicted regardless of the prosecutorial error. This Court, therefore, holds that while affirming this conviction, we are not ignoring the holding in *Henderson*. We are simply duty bound not to reverse if the error was not outcome determinative. Accordingly, defendant was not denied a fair and impartial trial because while the prosecutor may have engaged in behavior that could have improperly shifted the burden of proof to defendant, this Court does not believe that a shift occurred, and that the result was not outcome determinative. Furthermore, the prosecution did not infringe on defendant's constitutional right not to testify at trial.

Affirmed.

/s/ Amy Ronayne Krause

---

that fairness to the other party was achieved with the opportunity to file a motion for rehearing. 198 Mich App at 706.